# E. J. BOLLINGER v. JOHN GALLAGHER ET AL.

144　205,
163　249

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF YORK COUNTY.

Argued May 19, 1891—Decided October 5, 1891.
[To be reported.]

1. Where the plaintiff's affidavit, in an attachment before a justice of the peace under the act of May 8,1874, P. L. 123, fails to aver that the defendant is a non-resident of the commonwealth, on a motion to quash for such reason the omission of the averment is fatal to the proceeding.
2. But, if no motion to quash is made, and the defendant appears, and after a hearing on the merits a judgment is rendered for the plaintiff in the attachment, a sale of the property attached, under an execution issued, will be lawful and will divest the defendants' title to the property.
3. In such case, where the wife of the defendant in the attachment claims to be the owner of the property attached and sold, she is required, in an action of trespass against the constable and attaching creditor, to establish that she paid for the property out of her separate estate.
4. The plaintiff wife, in such action, being a non-resident, the laws of her state affecting the question of her ownership and her right to sue for trespass to her property in her own name, will be assumed to be the same as our own, until shown by competent evidence to be different.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 386 January Term 1891, Sup. Ct. ; court below, No. 12 April Term 1889, C. P.

On January 21, 1889, Eliza J. Bollinger issued capias in trespass against John Gallagher and John P. Johns, filing a statement of claim alleging the unlawful seizure and sale of chattels of the plaintiff by John Gallagher, upon the advice,

Statement of Facts.

order, direction, and authority of John P. Johns.   The defendants pleaded not guilty.

At the trial on November 12, 1890, the plaintiff under objection and exception to the defendants,[1] testified that on February 21, 1888, she resided at Alesia in Maryland, was engaged in the business of farming, and owned a bay mule, brown mare, saddle and two bridles; that on that day she sent her husband with said property to Hanover, Pa., and "when he came back he didn't have it."   Also under objection and exception to the defendants,[2] the plaintiff's husband testified that on the day stated the property in controversy belonging to his wife was taken from him by John Gallagher, the defendant, as he was leaving Hanover for his home.   On cross-examination, the witness was asked under what circumstances the property was taken from him.   Objected to.

Mr. Fisher:  Plaintiff having proved by the witness part of the circumstances under which the property was taken by the defendants, defendants propose to ask the witness, on further cross-examination, whether it was not under legal process at a suit instituted by John P. Johns, one of the defendants, on an alleged indebtedness of which he has already spoken, owing by the witness to John P. Johns, one of the defendants: to be followed by record evidence of those proceedings; for the purpose of showing fully the circumstances under which the property was taken, and that it was taken, as already stated, by a constable under legal process, issued by a creditor of the husband of the plaintiff; and also, in mitigation of damages.

Objected to, as not evidence for the purpose offered, and as not cross-examination; as attempting to introduce matters of defence on cross-examination.   Another objection: That it is not evidence against the plaintiff in this suit, nor any justification for seizing her property.

By the court:  I think I will exclude the offer; exception.[3]

The plaintiff, being recalled, testified against objection and exception to the defendants,[5] that she bought the bay mule, the saddle and two bridles, and a horse, afterwards exchanged for the brown mare, at a judicial sale of her husband's property in proceedings upon a chattel mortgage in Maryland; and, also against objection and exception to the defendants,[6] the chattel mortgage proceedings duly certified from the Circuit Court of Carroll Co., Md., were put in evidence.

Charge of Court below.

In the defendants' case, Philip S. Bowman, Esq., was called, and proved the record of certain proceedings before him as a justice of the peace at Hanover, in the case of John P. Johns against George Bollinger. This record was then offered in evidence " for the purpose of showing that the property in controversy in this case was seized and taken upon a process issued at the suit of John P. Johns against George Bollinger, for the purpose of showing the circumstances under which the property was taken, and specially in mitigation of damages. "

Objected to, as not evidence for the purpose offered, nor for any purpose; and as not a proper instrument of evidence, it appearing upon its face that it is the record of an illegal proceeding.

By the court: There is a claim here for some vindictive damages, and that this is some evidence in support of that claim. I do not think this record affords any justification for the claim. I think it is in mitigation of damages; and for that purpose I will admit it; exception.[7]

The record, then read, showed that on February 21, 1888, John P. Johns made affidavit before Philip S. Bowman, a justice of the peace, that George Bollinger was indebted to him in the sum of $150, and was about to remove his goods or personal property out of the county and state with intent to defraud his creditors, but not averring that the defendant was a non-resident of the commonwealth; that a bond was filed with sureties in the sum of $300, with the condition prescribed in the proviso to § 1, act of May 8, 1874, P. L. 123, and that a writ of attachment issued to John Gallagher, constable; that the writ was returned served on the defendant on February 21, 1888, at the same time attaching the property now in dispute; that on February 24, 1888, the parties appeared, both plaintiff and defendant by counsel, and after hearing, judgment publicly for the plaintiff for $150 and costs; and that the same day the execution issued on which the property was afterwards sold.

At the close of the case on the evidence, the court, LATIMER, P. J., charged the jury:

It seems that the husband of the plaintiff had gone to Hanover with the horse and mule, saddle and bridles, and on his way back from Hanover to his home, the defendant Gallagher

Charge of Court below.

seized and took possession of this property under an attachment issued by a justice of the peace of Penn township, Squire Bowman. Subsequently they were sold in Hanover by the constable. She alleges that the property was hers; that she had the right to possession of it and was in possession of it by her husband, who she says was her agent. She says that she bought it at a public sale of her husband's property, a judicial sale, in October, 1887, and that the property seized and sold by the defendants was hers at the time of its seizure. On cross-examination, he denied that at the time of its seizure he had said the mule was a neighbor's and the horse his. He also denied having suggested at the same time the expediency of alleging that the property was his wife's. One of the defendants contradicted Bollinger in this, and testified that he did make both the statements referred to. This is only of importance as affecting his credibility and the truthfulness of his testimony; for, if the property was hers, no declarations or statements of his in her absence can in any wise affect or impair her ownership; he cannot thus take away her title or right to this property.

In the light of subsequently introduced testimony, these alleged declarations of his, even if he made them, are of very little, if any, consequence; for the method by which she acquired whatever ownership and possession of the property she had is very clearly revealed, if you believe the uncontradicted oral evidence of Henry H. Miller, and of plaintiff, supplemented by the record of the chattel mortgage, and the proceedings under it, resulting in the sale of the property involved in this suit, among a large quantity of other articles of personalty, at which sale Mrs. Bollinger and Miller testify that she bought the mule, bridles, saddle, and a horse which was traded for the one involved in this suit.

It seems that her husband was a tenant on a leased farm of Meckley and Krebs, and owned and was in possession of the stock and farming utensils thereon, which were covered by this chattel mortgage on which they were sold at public sale in October, 1887. He, Bollinger, was the lessee of the farm, and farmed it up to that time. She bought in the stock and utensils at the sale, if you believe her uncontradicted oral evidence, but had no money or separate estate of her own, out

Charge of Court below.

of which to pay for them. She says she settled for them.
How they were paid for is not revealed in the evidence. She
and her husband aver that, from the time of the sale on till
April, 1883, she conducted the farming business, and owned
and controlled the stock, and he acted as her agent; that he,
by her orders, as her agent traded the horse bought at the sale
for the one involved in this suit; and that he as her agent had
taken the property to Hanover at the time it was seized.

[Now, if you believe the uncontradicted testimony as to her
purchase of the property at the mortgage sale, then I tell you
it was sufficient in the law to invest her with such ownership,
possession, and right of possession of this property as would
enable her to maintain an action to recover damages for its
unlawful taking, for its seizure by anybody but a creditor of
her husband taking it by a lawful process in execution for a
debt. It is unnecessary to decide whether her ownership
would be sufficient, as against a creditor of her husband seizing
it and selling it on lawful process, for that question does not
arise in this case. It came out incidentally in the testimony
that Mr. Johns, one of the defendants, was a creditor of George
Bollinger; and he undertook to justify the seizure of the
property as that of George Bollinger, by the attachment issued
by Philip S. Bowman, Esq., a justice of the peace, of which
the record is the evidence. But that entirely failed as a jus-
tification, for the proceedings were commenced without the
plaintiff Johns making an affidavit of the non-residence of the
defendant, which is an essential prerequisite to the issuing of an
attachment in such a case. For this reason, the entire proceed-
ing, from the issuing of the attachment to the seizure and sale
of the property, was illegal and void, and the defendants are
without any justification of their conduct.] [8]

It is unnecessary to decide whether, in proceedings by attach-
ment against a non-resident, a justice of the peace has jurisdic-
tion of claims beyond three hundred dollars, because this
attachment process was void for want of an affidavit, and
therefore affords no legal justification to the defendants for
seizing the property. [Now, if you believe the uncontradicted
evidence in this case of the purchase of this property by this
woman, then as against these defendants she had such owner-

ship and possession of the property as entitles her to recover damages for its unlawful taking, for this taking was unlawful.] [9]

The damages are of two kinds, compensatory and vindictive damages. . . . .

The defendants' points are as follows:

1. That the undisputed evidence in the case is that the plaintiff is and was, at and before the alleged trespass, and at and before the alleged purchase by her of the property in question, a married woman, the wife of George Bollinger, a tenant farmer in Carroll county, Md., residing with her husband on a farm leased by her husband; and she is therefore not entitled to the benefit of the provisions of the statute laws of Pennsylvania in relation to the rights of married women and their separate property, especially as against a creditor of her husband residing in Pennsylvania.

Answer: I answer that point as follows: That the right to the acquisition, possession and control, ownership and disposition of personal property, she being a resident of Maryland, rests not upon any statute of the state of Pennsylvania, but does rest upon the law of Maryland, either the common law or the statute law, as the case may be; and that the act of assembly passed June 3, 1887, entitled the married person's property act, does not affect this case in any way. [10]

2. That, under the evidence in the case, the plaintiff cannot sustain this suit in her own name, she not being nor having been a citizen of Pennsylvania, nor having any separate estate whatever, nor doing business with or upon the credit of any such separate estate, either at the time of her alleged purchase of the property in question, or at the time of the alleged trespass.

Answer: For the reasons stated in my general charge, I refuse the second point. [11]

3. That, in the absence of all evidence that plaintiff was the lawful owner of said property under the laws of Maryland, as against her husband's creditors, both the question of such ownership and her right to sue in her own name in the courts of Pennsylvania must be determined according to the laws of this state; and under the laws of Pennsylvania she has shown neither such ownership nor right to sue,—not having shown that she was the owner of any separate estate, or that she did

Arguments.

business, or acquired the property in question upon the credit of such separate estate.

Answer : I cannot answer this point in the affirmative.[12]

4. That if the jury believe that the property in question was seized and taken by virtue of the attachment proceedings contained in papers marked No. 2. H. C. D., the plaintiff is not entitled to recover in this suit.

Answer : I answer, that the fourth point is not correct; that the attachment proceedings were illegal by reason of the failure of the defendant to make an affidavit of non-residence.[13]

5. That the plaintiff has shown neither such ownership, interest in, nor possession of the property in question as would entitle her to recover in this suit.

Answer : I answer, that the fifth point is not correct.[14]

—The jury returned a verdict for the plaintiff for $309. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal and assigned for error :

1, 2, 5, 6. The admission of the plaintiff's offers.[1 2 5 6]

3, 7. The refusal of the defendants' offers.[3 7]

8, 9. The parts of the charge embraced in [ ][8 9]

10–14. The answers to the defendants' points.[10 to 14]

*Mr. H. L. Fisher* (with him *Mr. G. G. Fisher* and *Mr. C. E. Ehrehart*), for the appellants :

1. We submit that the court erred in rejecting the justice's record of the attachment proceedings, when offered for the purpose of showing under what circumstances the property in question was taken, and in admitting it only in mitigation of damages. The proceeding was under either §§ 26, 27, act of July 12, 1842, P. L. 345, or the act of May 8, 1874, P. L. 123. In either case, though there are certain irregularities in the proceeding, they are such as the defendant alone can take advantage of : Billings v. Russell, 23 Pa. 189 ; and the record should have been admitted for all the purposes for which it was offered, especially as showing the relation of debtor and creditor between Bollinger and Johns.

2. The court instructed that if the jury believed that the plaintiff had purchased the property at the chattel-mortgage sale, though she had shown neither payment, nor the means of payment, she was entitled to recover, because the attachment

proceedings were "illegal and void," and that as against the
defendants the plaintiff had such ownership and possession of
the property as entitled her to recover damages for the unlaw-
ful taking.   But, as against the creditors of her husband, she
could not acquire property on her own credit; she must own
a separate estate sufficient to serve as a basis of a credit, and
must establish that the goods were bought on the credit of her
separate estate: Blum v. Ross, 116 Pa. 163; Seeds v. Kahler,
76 Pa. 262; Leinbach v. Templin, 105 Pa. 522.

3. The plaintiff, not being a resident of Pennsylvania, could
not, even under the provisions of the act of June 3, 1887, P.
L. 332, sustain a suit in her own name against her husband's
creditor; for she was not engaged in any trade or business,
she did not contract for necessaries, nor was the contract for
the management of her separate estate, for she had none; said
act does not confer on married women a general power to con-
tract: Real Estate Co. v. Roop, 132 Pa. 498; Davis v. Zim-
merman, 67 Pa. 70; Spering v. Laughlin, 113 Pa. 209.   And
under what laws was the plaintiff seeking to recover, if not
under the laws of Pennsylvania?   If under the laws of her
own state, what were they, and how do they differ from our
own?   But the defendants did not seek to justify on the at-
tachment proceedings alone, but on the alleged ownership of
the property by the plaintiff's husband, and his undisputed in-
debtedness to the attaching plaintiff in the amount of the judg-
ment rendered by the justice.   This case is ruled by Billings
v. Russell, 23 Pa. 189, 191.

*Mr. H. C. Niles* (with him *Mr. W. F. Bay Stewart* and *Mr.
George E. Neff*), for the appellee:

1. A married woman, resident in Pennsylvania, may surely
maintain a suit in her own name, upon any contract or right
which she may have, "for the protection or recovery of her
own property, as an unmarried person: § 4, act of June 3,
1887, P. L. 332.   This proposition is general, and is not con-
fined to citizens or residents.   It is remedial and therefore is
to be liberally construed.   To deny this right of remedy to a
married woman, a resident and citizen of another state, would
violate § 2, article IV. of the constitution of the United States:
"The citizens of each state shall be entitled to all privileges

and immunities of citizens in the several states." In these privileges is included the right to institute and maintain actions: Corfield v. Coryell, 4 W. C. C. R. 371–381.

2. The plaintiff's husband had testified to the seizure of the property on the road as he was going from Hanover towards home, and that Gallagher who seized it took it to Hanover and locked it up. The offer of the defendants, under cross-examination, to ask the witness whether the seizure was not under legal process at the suit of Johns, the other defendant, was incompetent. The inquiry was clearly aside from anything the witness had testified to in chief, and besides, the record was the best evidence of whether the property was seized on legal process. And the record of the attachment proceedings was not offered to show "·the relation of debtor and creditor," and that the property was taken in execution for the husband's debt. The only specified purpose of the offer was in mitigation of damages. It was not offered as a justification.

3. The plaintiff had established her title and possession of the property by a judicial sale. As against a trespasser this was sufficient: Entriken v. Brown, 32 Pa. 364. Were the defendants trespassers? This depended upon whether the record of the justice in the attachment proceedings protected them. We submit that it did not, for two reasons: (a) It was not offered for that purpose.; (b) it shows upon its face that the remedy was one which the plaintiff had a right to invoke. The proceeding was under the act of May 8, 1874, P. L. 123, and is specially restricted to claims not exceeding $100. The act of July 7, 1879, P. L. 194, is inapplicable: Ross v. Miller, 14 W. N. 253. Hence the proceedings were not merely irregular but void, and this might be shown collaterally: Vansyckel's App., 13 Pa. 128. If, however, the proceeding were under §§ 26, 27, act of July 12, 1842, P. L. 345, and the plaintiff's husband was a resident of Maryland, as the constable's writ showed, the justice was entirely without jurisdiction: Vansyckel's App., supra.

OPINION, MR. JUSTICE WILLIAMS:

The plaintiff, who is the wife of George Bollinger, sues to recover the value of articles taken from the possession of her

Opinion of the Court.

husband.   Her complaint, as stated in the declaration, is that
" John Gallagher, one of the defendants, upon the advice, order,
direction, and authority of John P. Johns, the other defendant,
and by virtue of certain proceedings alleged to be instituted be-
fore Philip S. Bowman, Esq., one of the justices of the peace
in and for said county, by said John P. Johns against George
Bollinger, seized and attached the said chattels, and on the
third day of March sold the same."   This " seizure, attachment,
and sale " she alleges were unlawful and malicious, and made
after the notice of her title to the articles so seized and sold.

Two questions were thus raised, viz.: Was the seizure and
sale under the attachment lawful as against the defendant
therein, George Bollinger?   If so, does the plaintiff show a
title in herself good against her husband's creditor?   The sev-
enth and eighth assignments relate to the first of these ques-
tions.

The learned judge seems to have held that the attachment
proceedings were absolutely void, because the plaintiff's affi-
davit did not set out the non-residence of the defendant.   This
would have been fatal to the attachment on a motion to quash,
but no motion to quash was made.   The attachment was re-
turned with a personal service on the defendant.   On the
return day the defendant appeared in person and by counsel.
A trial was had upon the merits, and judgment rendered in
favor of the plaintiff for one hundred and fifty dollars, with
costs of suit.   On this judgment an execution was issued, and
by virtue of the execution the attached property was sold.   We
have no doubt that the sale so made divested the defendant's
title, and justified the sale by the constable, so far as George
Bollinger is concerned.   The third, seventh, and eighth assign-
ments are therefore sustained.

The seizure and sale having been made under legal process
against George Bollinger, we come next to inquire whether the
plaintiff showed a title in herself to the articles sued for.   She
was claiming to be the owner of property in her husband's pos-
session, and making this claim against one who is shown to be
a creditor of her husband.   It was therefore her duty to show
that she paid for it out of her separate estate : Gamber v. Gam-
ber, 18 Pa. 363; Bradford's App., 29 Pa. 513; Seeds v. Kahler,
76 Pa. 262; Blum v. Ross, 116 Pa. 163.   This she did not do,

Syllabus.

and because she did not, she had no right to recover against her husband's creditor, or against the officer who executed the process on which the sale took place.

The defendant's third point should also have been affirmed. The laws of a sister state, affecting the rights of married women, are not taken judicial notice of by the courts of this state; and for that reason they will be assumed to be the same as our own, unless shown by competent evidence to be different. The alleged trespass was committed in this state. The action was brought here. The lex fori was to be applied, unless some reason for refraining from its application was made to appear on the trial. No such reason was shown, and plaintiff was therefore bound to make her case in accordance with the laws of this state. For the reasons now given

The judgment is reversed, and a venire facias de novo awarded.