JOHN R. HITCHENS, INC., a corporation of the State of Dela-
ware, v. PHILLIPS PACKING COMPANY, INC., a corpora-
tion of the State of Maryland.

394

*(September* 30, 1943.)

HARRINGTON, Ch., LAYTON, C. J., RODNEY, SPEAKMAN and TERRY, J. J., sitting.

*Tunnell and Tunnell* for plaintiff in error.

*Daniel J. Layton, Jr.,* for defendant in error.

Supreme Court, September Session, 1942.

RODNEY, J., delivering the opinion of the Court:

We think the statute is clearly divisible into two parts. The first part, the commencement, is the statement as to the person who shall make the affidavit, viz., "the plaintiff, or any credible person for him." The second part is the affidavit itself, which furnishes the jurisdictional ground for the issuance of the attachment. Insofar as this case is concerned, these are that the defendant is justly indebted to the plaintiff in a stipulated amount, and is a non-resident of the State.

While it is objected that the words "credible person" should appear in the affidavit preceding the issuance of the writ, and do not so appear, yet no question is raised as to whether these words might appear in the recital or commencement of the affidavit or should appear in the body of the affidavit itself.

In order to determine the necessity of the insertion of the words "credible person" in the affidavit it is material to consider

(a) By whom and in what manner is to be determined the fact that the affiant is a "credible person."

(b) What is meant by a "credible person."

(a)   It would seem to be quite clear that the mere fact that the affiant himself did or did not recite himself as "a credible person" must be quite immaterial.   He, obviously, is not to determine the fact that he is credible, and he is not the person to be satisfied of the fact.   It seems equally clear that the person before whom the affidavit is made is not concerned with the statement.   The affidavit need not be taken before the Justice issuing the attachment, but may be made before any Notary Public or officer qualified to take affidavits either within or without the State.   This was not originally so.   Originally the affidavit was required to be made before the Justice who certified and filed the written affidavit. *Code 1829*, p. 348.

Whether or not the action of the Justice is made a ministerial duty by the language of the Statute (*Drake on Attachment, Sec.* 98) there is no person, other than the Justice to be satisfied of the fact that the affiant is "a credible person," and he makes no special finding of the fact any more than does the Prothonotary when a similar proceeding is in the Superior Court.   The fact that process is issued pursuant to the affidavit is prima facie evidence that the affiant is a credible person, and he will be so presumed. . This is the direct holding of *Ruhl v. Rogers,* 29 *W. Va.* 779, 2 *S. E.* 798. This was substantially the holding in *Italo-Petroleum Co. v. Hannigan,* 1 *Terry* (40 *Del.*) 534, 542, 14 A. 2d 401, where a specialty was required to be executed before a "credible witness."   It was held that the execution before a notary was prima facie sufficient to show an assignment before a "credible witness."   Where suit is brought on an assignment of a specialty required to be before "two credible witnesses" and a credible witness has died, such assignment is proved by merely proving the handwriting of the witness. *Jerman v. Hudson,* 2 *Harr.* (2 *Del.*) 134.

In *Wetherwax v. Paine,* 2 *Mich.* 555, the Court, in discussing an older statute providing that an affidavit for at-

tachment should be made by "the plaintiff or other credible person," *Rev. St.* 1846, c. 93, § 36, said, "to require the person making the affidavit, if made by a person other than the plaintiff himself, to swear that he is a credible person, in order to give the justice jurisdiction, might well be regarded as an absurdity."

(b) What is meant by a credible person?

The word "credible" is used in at least 12 sections of the Revised Code, and wherever it has been discussed it has been construed to mean "competent."

Almost all of the statutes using the word "credible" are old statutes passed at a time when many persons were incompetent because of marriage, interest in the subject matter of the litigation, state of servitude, or because of the commission of some offense. All of these disqualifications have been removed, and substantially all witnesses are now competent.

There can be no question that a "credible witness" as required by the Statute concerning wills, *Rev. Code* 1935, § 3703 *et seq.*, means a "competent" witness—a witness competent to testify when the will was executed. See *Hudson v. Flood*, 5 *Boyce* (28 *Del.*) 450, 94 A. 760; *In re Lecarpentiers Will*, 10 *Del. Ch.* 503, 91 A. 204; 1 *Page on Wills*, Sec. 312, p. 580.

In *Hearn v. Ralph*, 2 *Harr.* (2 *Del.*) 6, the Court considered the word "credible" with reference to an affidavit to prevent stay of execution. There the affiant was a married woman, and it was objected that the affiant because of her marriage was not a "credible" person, viz., not competent to make the oath. The Court intimated that since the affiant was a party she was a "credible" person, and therefore competent.

If the word "credible" be accorded the meaning adopted by some courts, viz., a particular knowledge of the facts that

are sworn to, the result, we think, is the same. It is still either the statement of the affiant himself or the mere recital of the officer taking the affidavit. No words of the statute imply that the Justice should make a record entry of his finding upon the subject.

We are of the opinion that the affiant will be presumed to be a credible person unless some issue is made of the fact.

2. We now come to the contention that the affidavit should affirmatively show that the affiant made the affidavit "for" or on behalf of the plaintiff.

It will be noted that in the present case the plaintiff is a corporation which can only make an affidavit by a natural person as agent. This agency may be either express or it may be implied as in the case of a proper officer, but where the affiant does not appear as an officer many cases hold that some showing of agency must appear. See cases cited in 6 *C. J.* 105, 7 *C. J. S., Attachment,* § 106; 4 *Am. Jur.* 853; 16 *L. R. A. (N. S.)* 703. See also *Yarnall v. Haddaway,* 4 *Harr.* (4 *Del.*) 437, where it was held that some showing should appear that the affiant acted "for" the plaintiff.

In the present case it does not appear that the affiant acted for the plaintiff; it does not appear that he was an officer, director, or interested in or concerned for the plaintiff in any manner whatsoever.

In view of the Delaware decision and the facts of this case we do not feel called upon to determine whether or not the affidavit would have been sufficient if timely objections had been taken thereto. No objection at all was made. This timely objection could have been made in a variety of ways. The defendant could have appeared for the sole purpose of quashing the attachment in a direct and immediate procedure. If it be suggested that the defendant could not appear without giving bond, attention is drawn to a special statu-

tory provision of precise application. Since 1881 (*Vol.* 16, p. 705) there has existed a special statute (now found as *Sec.* 4607, *Revised Code of* 1935), which authorizes any Judge of the Superior Court, in term or in vacation, to investigate the allegations of any affidavit filed before a Justice of the Peace, as a preliminary step for an attachment, and to discharge such attachment, if improper. No steps were taken to test the validity of the affidavit or attachment.

The failure to take advantage of an analogous statute was held in *Saunders v. Gallaher,* 21 *Tenn.* 445, 2 *Humph.* 445, to be fatal to subsequent objection.

We think the affidavit was at most voidable and not void. The Justice clearly had jurisdiction of the subject matter, which was a book account for $202.50. He clearly had a general jurisdiction by foreign attachment over non-residents. He had no jurisdiction in personam over the defendant until such defendant appeared in response to process.

In Delaware it has always been held (following the custom of London) that a primary purpose of foreign attachment is to obtain the appearance of the defendant. *Blaney v. Randel,* 3 *Harr.* (3 *Del.*) 546; *Geylin v. De Villeroi,* 2 *Houst.* (7 *Del.*) 203; *Wells & Sappington v. Shreve's Adm'r,* 2 *Houst.* (7 *Del.*) 329, 370; *Bellah v. Hilles,* 2 *Penn.* (18 *Del.*) 34, 43 A. 89.

We must now consider the various steps taken by the defendant, the effect of which, in our opinion, made the judgment of the Justice without liability to objection.

1. The defendant appeared by counsel and requested and obtained a continuance. We shall not pause to discuss this step.

2. On November 28, 1941, the defendant, with surety, entered bond. The Statute, *Sec.* 4535, *Revised Code* 1935, provides:

"If at any time before final judgment, the original debtor shall appear and give security, to the justice's satisfaction, that he will answer the plaintiff's demand and satisfy any judgment that may be rendered against him in such suit, the attachment shall be dissolved, and the cause proceed as in other cases."

As disclosed by the authorities there are two distinct classes of bonds given by the defendants in attachment proceedings. Some are bonds given for the dissolution of the attachment and for the payment of any judgment subsequently recovered. The other class is a replevin or forthcoming bond which merely releases the attached article from the restraint of the attachment. The differences in the bonds are considered in annotations in 32 *L. R. A.* (*N. S.*) 406, and *L. R. A.* 1916F, 587.

In Delaware the statute itself fixes the character of the bond. The statute states that when the bond is given "the attachment shall be dissolved, and the cause proceed as in other cases." This, of course, means as in cases commenced by summons. In *Bellah v. Hilles, supra,* [2 *Penn.* (18 *Del.*) 34, 43 A. 90], the Court said:

"That as foreign attachment was only to compel appearance, and that as the defendant had appeared by putting in special bail * * * the case proceeded as in cases commenced by summons * * *."

In *Blount v. American Lead, etc., Co.* (8 *Cir.*) 161 F. 714, 716, the Court, in considering a similar bond, said:

"All proceedings in relation to the attachment were superseded by the giving of the bond and securing a dissolution of the attachment."

In *Payne v. Snell,* 3 *Mo.* 409, the Court held that after the giving of the bond the case stood as though commenced by summons, and all defects of the preliminary affidavit for attachment were waived.

Dependent upon the character of the bond the authorities are divided as to whether, after the bond is given, the defendant can then object to insufficiency of the preliminary affidavit. The cases are collected in 72 *A. L. R.* 121, and 12 *Ann. Cas.* 170. The majority of cases seem to hold that the giving of the bond and the conversion of the form of action from attachment to summons operates as a waiver, and that thereafter no objection can be made to the preliminary affidavit. Some cases hold that even after giving of the bond objection may still be made to the defects of the affidavit. This conflict is of little importance in the present case for the reason that the defendant, even after giving bond, made no objection to the affidavit, but entered into trial, and it is this action that must now be considered.

■ 3. The defendant not only gave bond for the dissolution of the attachment, as above recited, but on December 5, 1941, it appeared by counsel and with witnesses and entered into a trial of the merits without any objection at all to former proceedings, or to any defect in the affidavit. At the trial the defendant pleaded and brought forward a counter-claim against the plaintiff, amounting to $1274.50, and sought an affirmative judgment against the plaintiff. By this counter-claim each of the parties became the plaintiff against the other—the original plaintiff for its original claim, and the defendant for its counter-claim, and the original plaintiff could not have defeated the counter-claim by discontinuance or non pros. *Prettyman v. Waples' Ex'r*, 4 *Harr.* (4 *Del.*) 299, 300; *Mathis v. Ligon* (10 *Cir.*) 37 F. 2d 635. If judgment had been given for the defendant on his counter-claim it is difficult to see what jurisdictional objection could have been made to the judgment. The mere circumstance that judgment was given for the plaintiff could not change the situation. The important circumstance is that the defendant accepted and adopted the process, and on that process sought judgment on the facts. Having, by its counter-claim, invoked the jurisdiction of the Court for the purpose

of obtaining an affirmative judgment in its favor, the defendant cannot afterwards be heard to deny such jurisdiction. *Merchants' Heat & Light Co. v. Clow & Sons,* 204 *U. S.* 286, 27 *S. Ct.* 285, 51 *L. Ed.* 488; *O. J. Lewis Mercantile Co. v. Klepner* (2 *Cir.*) 176 F. 343.

In *Bollinger v. Gallagher,* 144 *Pa.* 205, 22 A. 815, the Court held that a failure to include in an attachment affidavit the allegation that the defendant was a non-resident would have been fatal, and the proceedings void on a motion to quash. The defendant did not move to quash, but went into a hearing on the merits, and a judgment against the defendant was held good.

In *Pacific National Bank v. Mixter,* 124 *U. S.* 721, 8 *S. Ct.* 718, 721, 31 *L. Ed.* 567, the Court held that where an officer had absolutely no power to issue an attachment, then any bond given for the dissolution of the attachment was void, but that where the Court had power to issue the attachment, which power was defectively exercised, the execution of the bond implies a waiver of all mere irregularities, and that the sureties "are estopped from setting up, as a defense to an action for a breach of its condition, any irregularities in the form of proceeding to obtain an attachment authorized by law which would warrant its discharge upon a proper application made therefor."

In *National Surety Co. v. Poates,* 43 *App. D. C.* 334, the Court applied the above case to a defective affidavit.

A very pertinent case in this State is *Kizer v. Downey,* 1 *Harr.* (1 *Del.*) 530. Under the then law (*Code* 1829, p. 331) the Justice could issue writs of summons or of capias. Writs of Capias could not issue against a freeholder except upon a precedent affidavit of the plaintiff that the defendant was about to remove from the county. Kizer was a freeholder. The suit was commenced by capias without the preliminary affidavit, and Kizer was arrested. He went into a hear-

ing upon the merits and, having been unsuccessful in such suit, brought certiorari. The Court affirmed the judgment, saying: "the defendant submitted to go into a trial without objecting to the process on which he was arrested; and the irregularity in the form of process does not affect the jurisdiction."

To the same effect were many English cases concerning affidavits to hold to bail. See *Jones v. Price*, 1 *East.* 81, 102 *Eng. Rep.* 32; *D'Argent v. Vivant*, 1 *East.* 330, 102 *Eng. Rep.* 128; *Norton v. Danvers*, 7 *T. R.* 375, 101 *Eng. Rep.* 1028; *Chapman v. Snow*, 1 *Bos. & Pul.* 132, 126 *Eng. Rep.* 819. See also *Lewis v. Brackenridge*, 1 *Blackf.* (*Ind.*) 112, 115.

The foregoing English cases have been expressely adopted and approved by the Court of Errors and Appeals of Delaware in *Sedgewick v. Houston*, 9 *Houst.* (14 *Del.*) 113, 32 A. 12, 43 *Am. St. Rep.* 165. In that case the statute required that

"no writ of capias ad respondendum shall be issued * * * in any civil action unless the plaintiff shall have made a written affidavit and filed the same in the office of the prothonotary * * *."

No affidavit was filed in the cause and it was argued that the writ was "wholly and absolutely void unless such affidavit is made and filed * * *." The Court held

"an affidavit prescribed by act [of Assembly] to hold a defendant to bail in a civil action is a part of the process to bring him into court, and any objection to it on the ground of defect, deficiency, or irregularity in it may be and must be taken advantage of by the defendant in the first instance, and before he has given bail or entered appearance; and, if he fails to do so, he must be considered to have waived his objection to it, and neither he nor his bail can afterwards avail themselves of the objection."

The foregoing cases (involving proceedings by capias) have particular application when it is seen that our original foreign attachment proceedings before a Justice of the Peace (*Code* 1829, p. 351) provided that the security to be given by the defendant should be in form of bail and provided "after entry of bail the cause shall proceed in the same manner as if it had been commenced by capias," and the change in the form of security from bail to a dissolution bond made no alteration in the effect of the giving of the obligation itself.

It would seem that safeguards concerning the actual arrest of the defendant himself must be considered as of greater moment than the mere attachment of property.

We are of the opinion that, in the absence of timely objection to the form of an affidavit, that such affidavit was sufficient to warrant the subsequent judgment of the Justice. This is especially true in view of the action of the defendant in appearance, dissolution of attachment by giving bond and entering into trial, and seeking an affirmative judgment by his counter-claim.

The judgment of the Superior Court must be reversed.

LAYTON, C. J., and TERRY, J., dissent.