CHITTY v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

Division One, January 13, 1902.*

1. **Appellate Practice:** LAW SUIT: FINDING OF FACT. Where there is evidence to support the allegation of the petition, that the injury to plaintiff was caused by the collision between two trains, and also evidence that it was caused, as defendant maintains, by his attempt to jump from the train to avoid an impending collision, the appellate court will not interfere with the jury's verdict for plaintiff in the proper amount if the instructions clearly present the law of the case.

2. **Negligence:** INSTRUCTION: NARROWING ISSUES: COLLISION. The plaintiff charged his injuries to a collision between two trains, and alleged that he was thrown forward suddenly and his leg caught between the door and door jamb. Defendant offered an instruction requiring the jury to find that plaintiff was thrown "from his seat." *Held*, that, as there was no such allegation in the petition, the court properly struck out those words from the instruction.

3. **Excessive Verdict:** POWER TO ORDER REMITTITUR. The Supreme Court has the power to order a remittitur where the verdict is excessive, as the condition upon which it will affirm the judgment. (ROBINSON, J., dissenting.)

*NOTE.—Decided June 29, 1901. Motion to transfer to Court In Banc denied January 13, 1902.

4. ——: CRUSHED LEG: $15,000. Plaintiff's leg was crushed by the collision of trains. He was fourteen years old at the time and twenty-one at the trial. Since the accident he has worked at scaling logs and keeping books, but otherwise his present and future earning capacity was not shown. The bone was broken in more than one place and protruded through the soft parts or skin. At the time of the trial he still suffered pain, and the wound was not entirely healed, but periodically, every few weeks, suppuration ensued, and he had to keep the leg constantly bandaged. The injured leg is shorter than the other, but by putting cotton in the shoe he is able to walk, by the aid of a stick, without any particular trouble. *Held*, that a verdict for $15,000 is excessive, but the trial being otherwise free from error, the judgment will be affirmed upon the filing of a remittitur of $5,000 within thirty days, otherwise reversed and remanded.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED UPON CONDITION.

*Martin L. Clardy, Louis F. Dinning* and *James F. Green* for appellant.

(1) The plaintiff in his petition pleaded one cause of action and was permitted to recover upon another and different cause of action. Yarnell v. Railroad, 113 Mo. 570; Chitty v. Railroad, 148 Mo. 64; Waldheir v. Railroad, 71 Mo. 514; Mason v. Railroad, 75 Mo. App. 1; Hite v. Railroad, 130 Mo. 136; Milling Co. v. Transit Co., 122 Mo. 277; Melvin v. Railroad, 89 Mo. 106; Woods v. Campbell, 110 Mo. 572. (2) The plaintiff, having alleged in his petition a specific act of negligence as a right of recovery, to-wit, a collision of trains, can not recover upon evidence showing an attempt to jump to escape or avoid an apprehended collision. McCarty v. Hotel, 144 Mo. 397; McManamee v. Railroad, 135 Mo. 440; Chitty v. Railroad, 148 Mo. 75. (3) The court committed error in modifying instruction 6 by striking out the clause, "from his seat." Chitty v. Railroad, 148 Mo. 76, par. 2. (4) The

damages awarded are excessive, unwarranted and indicate prejudice and passion on part of the jury.   Chitty v. Railroad, supra; Rodney v. Railroad, 127 Mo. 68; Waldheir v. Railroad, 87 Mo. 37, 49 Pac. Rep. 478; Berksen v. K. C. Cable Co., 144 Mo. 229; Hollenbeck v. Railroad, 141 Mo. 112; Sawyer v. Railroad, 57 Mo. 240; Adams v. Railroad, 100 Mo. 555; Furnish v. Railroad, 102 Mo. 438; Hurt v. Railroad, 94 Mo. 255; Gurley v. Railroad, 104 Mo. 211; Nichols v. Crystal Plate Glass Co., 126 Mo. 55; Goetz v. Ambs, 22 Mo. 172; Whitsitt v. Ransom, 79 Mo. 260; Garrett v. Greenwell, 92 Mo. 125; Caruth v. Richeson, 96 Mo. 192; Carroll v. Railroad, 107 Mo. 653; State v. Railroad, 31 S. W. 263; s. c., 32 S. W. 33; Lily v. Menke, 126 Mo. 212; Slette v. Railroad, 53 Minn. 341; Peri v. Railroad, 87 Hun (N. Y.) 499.

*Wilson Cramer* for respondent.

(1)   Instruction 1, given on behalf of plaintiff, limits his right to recover to the facts stated in the petition, and is identical with the one given at the first trial and approved by this court on the former appeal.   (2)   In view of the ruling of this court on the instruction given at the first trial, relative to an attempt to escape, no instruction on that subject was asked or given at the last trial.   (3)   The issue presented to the jury by the instructions is clean cut as to whether plaintiff was injured in the manner stated in the petition, or by jumping from the car, as contended by defendant.   (4)   Instruction 2 on the measure of damages is the same as the one given on the former trial, and correctly lays down the rule in cases of minor plaintiffs.   Rosenkranz v. Railroad, 108 Mo. 15; Schmitz v. Railroad, 119 Mo. 277.   (5)   The damages are not excessive. The accident occurred on April 3, 1893.   Plaintiff was taken to the hospital in St. Louis on April 5 and kept there till January 20, 1894, nine months and fifteen days.   He was confined to his bed for six weeks.   It was three months before he

could get about on crutches, and for five months afterwards
he was compelled to use them.    He suffered pain continuously
for seven months and has since suffered off and on for two or
three weeks at a time.    His ankle is stiff and the leg enlarged
at the seat of fracture.    Soon after his return from the hos-
pital his leg began to fester and discharge matter, and this
has continued periodically every four or six weeks ever since
up to the trial in March, 1900, nearly seven years.    During
all this time his limb has required constant bandaging.    Dr.
Ryder, who examined him in March, 1900, found a cicatrix on
the inner side of the leg five by five inches with an open sore
in the center, one inch by one and three-fourths inch, which he
says is permanent and has the effect of impairing plaintiff's
general health. (6) The fact that this is the second verdict,
rendered seven years after the accident on proof of plaintiff's
condition at that time, and four years after the first trial, that
the case was tried before another judge and in a different
county from the one in which the first trial was had, should be
considered by this court in passing on the question of the ex-
cessiveness of the verdict.    Fullerton v. Fordyce, 144 Mo. 534.
(7)   Passion and prejudice will not be presumed from the
amount of the verdict alone.    Griffith v. Railroad, 98 Mo.
176.    (8)    Nor is the amount allowed by the jury proof of
passion or prejudice.    Benedict v. Railroad, 123 Mo. 242;
Berkson v. Railroad, 144 Mo. 222.    (9)    Plaintiff's injuries
were not the result of an accident, but were caused by the
careless, wanton recklessness of the agents of defendant, who
owed plaintiff the duty of safe transportation to his destination.

I.

MARSHALL, J.—This the second appeal in this case.
When the case was here before, the judgment of the circuit
court in plaintiff's favor for $15,000 damages was reversed for
the errors in law then pointed out.    [Chitty v. Railroad, 148

Mo. 64.] Afterwards, the defendant obtained a change of venue from Scott to Stoddard county, where the case was tried anew and again resulted in a verdict and judgment for the plaintiff for $15,000, and defendant has again appealed.

On the former appeal it was held that a party can not count upon one cause of action and recover upon another, even though such cause of action would warrant a recovery if properly pleaded. And because the plaintiff in this case predicated his right to recover upon a collision between two trains of the defendant, it was held that an instruction was erroneous, which authorized a verdict in his favor if he received injuries while attempting to escape from the train when he had reasonable cause to apprehend a collision and when the danger thereof was, and he believed it was, imminent and impending, and, e converso, that it was error to refuse an instruction asked by defendant, that if he was so injured, and not from the collision as his petition charged, the verdict must be for the defendant. It was further then held that the petition stated a cause of action, that there was evidence sufficient to support the allegations of the petition and that the first instruction given upon the theory of the petition was proper.

Upon the trial anew, the errors pointed out when the case was here before were avoided. The plaintiff adhered strictly to the allegations and theory of his petition, and at his instance the court limited his right to recover solely to the cause of action pleaded. The court gave two instructions asked by defendant to the effect that the plaintiff could not recover if he received his injuries by jumping from the train and not from the collision of the two trains, thus emphasizing the instructions given for the plaintiff, limiting his right to recover to the collision. The case was, therefore, tried in accordance with the principles of law announced by this court on former appeal.

There is sufficient testimony to support the allegations of the petition and the theory of the plaintiff. There is also evi-

dence to support the defendant's contention that the plaintiff received his injuries by jumping from the train before the collision occurred. The plaintiff testified that he was a passenger on the defendant's freight train, riding in the caboose. This train was standing on the main track at Delta, on April 5, 1893, headed north. Another freight train was backed against it and struck the caboose car with so much force as to drive the whole train, consisting of five or six cars, six feet up the track, to demolish the platform and displace the trucks of the caboose and to knock the south end of the caboose to the west so that the center of the caboose was over the west rail of the track. Before the collision, Samuel Lane, a passenger, was on the rear platform of the caboose. When the colliding train was forty or fifty feet from the caboose, Lane gave the warning of the impending collision and jumped off the platform. Thereupon, Davenport, the conductor, immediately jumped out of the side door on the east of the caboose, and was followed at once by Isham Hanbaugh and James Higginbotham, two stockmen, who were also passengers on the caboose. This left only the plaintiff, a boy of fourteen years of age, and a man named Kellum, in the caboose. The plaintiff heard the warning to look out—there was going to be a wreck, and he looked out of the rear door of the caboose and saw the approaching train and started toward the door on the east side of the caboose with the intention of jumping as the conductor and the other passengers had done. But before he reached the door the collision occurred, the caboose was knocked towards the west, and he was thrown towards the east, head foremost, and through the side door, but after his whole body, except his right leg, had passed through the door, the sliding door on the east side of the caboose was suddenly shut and caught his right leg between the door and the jamb, and as the door rebounded his leg was released and he fell from the car into the ditch at the side of the train. In this account of the accident, and especially as to his leg being caught be-

tween the door and the jamb, the plaintiff is corroborated by the testimony of D. M. Dunn, who said he saw the door strike his leg, and by other witnesses who saw his leg just after the accident, and who said his leg was crushed and bruised on both sides of the leg, thereby supporting the contention that it was caught between the door and the jamb. On the other hand, the conductor and Hughes, a brakeman, who was on the third car from the caboose setting the brakes, testified that the plaintiff jumped from the caboose before the collision, and was injured by the jumping.

Upon this conflict as to the facts, the court submitted the case to the jury upon proper instructions asked by the plaintiff limiting his right to recover to the finding of the fact to be that he was injured by the collision, and upon proper instructions asked by the defendant also limiting his right to recover to the finding of the fact to be that he was injured by the collision, and negativing his right to recover if the jury found the fact to be that he was injured in consequence of jumping from the train to escape injury from the impending danger of a collision. The jury found for the plaintiff, thereby necessarily finding the fact to be that the injury was received as plaintiff contended and against the defendant's contention. This is an action at law, and this an appellate court, and the practice is settled that under the conditions here presented this court will not disturb the finding of fact by the jury in plaintiff's favor, as it would not have done if the jury had adopted defendant's contention and returned a verdict in its favor. The difference between the parties was simple and clear, and there was evidence sufficient to support a verdict either way. This being so this court will not interfere with the finding of the facts as to the cause of the injury.

The defendant, however, still contends that there was a clear departure between the plaintiff's allegations and his proofs. This presupposes that the fact is that the plaintiff was injured by jumping and not by the collision. As pointed

out, there was sufficient evidence to support a finding that the plaintiff never jumped, but was thrown out of the car while intending to jump, but before he had time to put his intention into execution. This being true it follows that there was no such departure between the allegations and the proofs, and therefore this contention fails.

The defendant complains of a modification of its sixth instruction, which was as follows:

"The court instructs the jury that the plaintiff charges, in his petition, that there was a collision between the caboose car in which he was riding and another car on defendant's road, and that by the shock of said collision of cars, the sliding door at the side of the caboose was caused to fly shut suddenly and with great force, and plaintiff, being thrown forward by the concussion, had his right leg caught between the door and the door jamb and the leg crushed, and that, upon the rebounding of the door, plaintiff was thrown with violence from the caboose, and sustained injuries and bruises upon his body and chest; and, unless you find from the evidence that by the shock of said collision plaintiff was thrown forward from his seat in the car and had his right leg caught between the door and the door jamb, then you must find a verdict for the defendant."

The court struck out the words "from his seat'" and gave the instruction. There was no error in so doing. There was no allegation in the petition that the plaintiff was thrown forward "from his seat." The allegation in the petition is: "that, by the great shock of said collision of cars, the heavy sliding door at the side of said caboose, which was open at the time, was caused to fly shut suddenly and with great force, and plaintiff, being thrown forward by the concussion, had his right leg caught between said door and the door jamb and the same was crushed between the ankle and the knee."

The case was tried in strict accordance to the law as declared by this court on former appeal, and no error of law is apparent from the record.

## II.

This leaves for consideration only the contention that the verdict is excessive. The plaintiff was fourteen years of age when the injury was inflicted. His prior earning capacity is not shown. His present and future earning capacity is not definitely shown, but sufficient appears to make it clear that it is not entirely destroyed, for he has since worked scaling logs and keeping books. He was confined to his bed in the hospital some six weeks, and was compelled to use crutches and remain at the hospital for several months. At the time of the second trial, some seven years after the injury was received, he still suffered pain, and his wound was not entirely healed, but periodically, every few weeks, suppuration ensued, and he had to keep the leg constantly bandaged. The injury was a compound comminuted fracture, that is, the bone was broken in more than one place and protruded through the soft parts or skin. The injured leg is shorter than the other, but by putting cotton in the shoe the plaintiff is able to walk, by the aid of a stick, without any particular trouble.

Counsel for the defendant have collated many cases, in which verdicts for injuries to the leg or foot have been set aside as excessive, some of which are as follows:

| Injury. | Amount of Verdict. | Title of Cause. |
| --- | --- | --- |
| Fracture of leg ... | $14,833 | Railroad v. Singleton, 66 Ga. 252. |
| Broken leg . ..... | 4,000 | Lombard v. Railroad, 47 Ia. 494. |
| Loss of foot....... | 12,000 | Kroener v. Railroad, 88 Ia. 16. |
| Broken leg .... .. | 4,100 | Slette v. Railroad, 53 Minn. 341. |
| Broken ankle..... | 4,000 | Johnson v. Railroad, 67 Minn. 260. |
| Loss of foot. ..... | 20,000 | Pfeffer v. Railroad, 4 N. Y., Misc. Rep. (Buffalo Sup. Ct.) 465. |
| Loss of leg ....... | 16,000 | Bailey v. Railroad, 80 Hun (N. Y.) 4. |
| Loss of foot...... | 10,000 | Peri v. Railroad, 87 Hun (N. Y.) 499. |
| Broken leg ... .. | 11,000 | Bronson v. Railroad, 67 Hun (N. Y.) 649. |

The most notable precedents in our State, cited and relied on by counsel are these: In Hollenbeck v. Railroad, 141 Mo. 1. c. 113, the leg had been amputated three times and the plaintiff was a cripple for life. The verdict was for $10,000. It was said: "While the verdict is large, we are not prepared to say that it was the result of passion or prejudice," and it was allowed to stand.

In Waldhier v. Railroad, 87 Mo. 37, both feet were amputated. The verdict was for $25,000, and it was affirmed upon the plaintiff remitting $5,000.

In Whalen v. Railroad, 60 Mo. 323, one foot was crushed and one leg amputated. The verdict was for $8,000, and it was allowed to stand, although the court said: "We would have been better satisfied, under all the circumstances, if the amount had been less."

In Adams v. Railroad, 100 Mo. 555, both bones of the ankle were broken. The verdict was for $10,000, and it was held to be so excessive as to indicate prejudice, and accordingly the judgment was reversed.

In Nicholds v. Crystal Plate Glass Co., 126 Mo. 55, the bones of the plaintiff's ankle were broken; he used crutches for five or six months. At the time of the trial he had to use an iron brace and a cork-bottom shoe, and his foot was turned outward and less than half of the sole of the foot rested on the floor. The verdict was for $8,666. The court said: "We can not escape the conclusion that the judgment is excessive." Accordingly a remittitur of $3,666 was ordered by this court, and the judgment allowed to stand for $5,000.

In Furnish v. Railroad, 102 Mo. 438, the injury was to the spinal cord, and she was not able to walk and had only left the house once after the accident, and would be a cripple for life. The verdict was for $15,000. This court ordered a remittitur of $5,000, and allowed the judgment to stand for $10,000.

In Gurley v. Railroad, 104 Mo. 211, the fleshy portion of

the leg from the thigh down, was bruised and mashed. There were no bones broken. The plaintiff was able in eight or nine months to resume his work as a commercial traveler. The verdict was for $15,500. This was held excessive and the judgment reversed, it being held that this court had no power to order a remittitur.

In Burdict v. Railroad, 123 Mo. l. c. 236, the injury was the loss of the lower part of an arm. The verdict was for $12,500. The trial court ordered a remittitur of $2,500. This court held the judgment (for $10,000) excessive, and a further remittitur of $3,000 was ordered, and the judgment allowed to stand for $7,000. [Ibid. l. c. 243.]

From these precedents it appears that no verdict for $15,000 has been allowed to stand where the injuries were not more serious and the earning capacity of the plaintiff more seriously impaired than appears to be the fact in the case at bar. We are constrained to hold that the verdict in this case is excessive, and that the plaintiff will be adequately compensated and the defendant sufficiently punished if the judgment is reduced to a sum, which capitalized, will furnish the plaintiff a reasonable support for life.

The power of this court to order a remittitur has been fully discussed. For many years the power was exercised without serious question. This power was first doubted in Gurley v. Railroad, 104 Mo. l. c. 233, by Division No. 2. Afterwards, in Burdict v. Railroad, 123 Mo. l. c. 241, the decision in Gurley v. Railroad in this respect was questioned and the power to order a remittitur expressly affirmed by the majority of this court, In Banc. Thereafter, in Rodney v. Railroad, 127 Mo. 676, the majority of Division No. 1, following the Burdict case, ordered a remittitur, but when the case was decided In Banc, a majority of the court held that this court has no power to order a remittitur. The power of this court in this regard was again discussed in Division No. 1, when this case was here on former appeal, and the majority of the

court (BRACE, P. J., and VALLIANT and MARSHALL, JJ.) held that the court has that power. ROBINSON, J., expressed no opinion. The reasons pro and con have been so fully given in the cases cited that it is only necessary to refer to those cases for a full understanding of the question. The practice of this court for years, the weight of modern adjudications in other States, and the speedy and direct termination of controversies, are unquestionably in favor of the existence of the power.

The cases which deny the power, concede the right of this court to attain the same end by the indirect route of setting aside judgments on the ground that they are, on their face, the result of passion, prejudice or misconduct of the jury, until finally some jury is thus coerced into returning a verdict which this court does not think is excessive. As long as the power is conceded to set aside a verdict otherwise proper, solely on the ground that it is excessive, it must be acknowledged that the proper, expeditious and economical administration of the law requires the error to be corrected in a direct way by remittitur instead of by the indirect way above pointed out. Experience has demonstrated not only the propriety but the necessity for so reaching a just and speedy correction of an otherwise unobjectionable verdict. For these reasons we hold that the power to order a remittitur in such and like proper cases exists, and because we find no other error in this case, and because we are constrained to conclude that the verdict in this case is excessive, it is hereby ordered that upon the plaintiff entering a remittitur of five thousand dollars of the principal of this judgment with the clerk of this court within thirty days from this date, the judgment remaining for ten thousand dollars will be affirmed, otherwise the judgment will be reversed and the cause remanded solely on the ground that the judgment is excessive. All concur; *Robinson, J.*, as to the first paragraph only, and dissents as to the second paragraph, on the ground that this court has no power to order a remittitur.