RITTEL, Respondent, v. E. E. SOUTHER IRON COMPANY, Appellant.

St. Louis Court of Appeals, November 18, 1907.

1. PERSONAL INJURIES: Measure of Damages: Loss of Earnings. In an action for injuries to plaintiff, where it was shown that the injuries sued for were the loss of a thumb and forefinger, that the plaintiff had been earning nine dollars a week before the injury, that he had earned nothing after it up to the time of trial, a period of six months, and that in his opinion he was unable to do the same kind of work as he had done before, it was proper to submit to the jury as an element of damage the loss of earnings which plaintiff had sustained or would sustain as a consequence of the injury.

2. ———: Excessive Verdict: Function of Appellate Court. Courts of review are required to consider the evidence in a case where damages have been awarded and if it considers the award of damages excessive, to correct the verdict or reverse the judgment.

3. ———: ———: ———. In an action for personal injuries where it was shown that the plaintiff had lost a thumb and forefinger, had been unable to work for a period of six months, that he would be unable to do the same kind of work he did before the injury, where there was no evidence that the plaintiff incurred expense for medical attendance, a verdict for $4,500 was excessive and should be reduced to $3,000 by remittitur.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen*, Judge.

AFFIRMED *conditionally.*

*McKeighan & Watts* and *Wm. R. Gentry* for appellant.

(1) Appellant's complaint as to this instruction is that it authorizes the plaintiff to recover for loss of earnings in the future when there is no evidence tending to show that he will sustain any future loss of earnings. This is error. Duffy v. Transit Co., 104 Mo. App. 235; O'Brien v. Loomis, 43 Mo. App. 29; Dunn v. Railway, 21 Mo. App. 183; Mammerberg v. Railway, 62 Mo. App. 563; Wallack v. Transit Co., 100 S. W. 496; Gibbler v. Railroad, 101 S. W. 37. (2) The verdict is so grossly excessive as to show prejudice, bias, passion, mistake or sympathy on the part of the jury. Railroad v. Peavy, 34 Kan. 474; Railroad v. Foley, 94 Ky. 220; Railway v. Law, 21 S. W. 648; Gahagan v. Aermotor Co., 67 Minn. 252; Newcomb v. Railway, 182 Mo. 687; Chitty v. Railway, 166 Mo. 435; Mitchell v. Railway, 102 S. W. 675; Reynolds v. Transit Co., 189 Mo. 408; Stolze v. Transit Co., 188 Mo. 581; Heddick v. Car Co., 102 S. W. 675; Brady v. Railway, 102 S. W. 978.

*A. R.* and *Howard Taylor* for respondent.

GOODE, J.—This is an action to recover damages for a personal injury sustained by plaintiff while in the employ of defendant company. The accident occurred July 27, 1906, plaintiff being at the time twenty-one years of age. He had been in defendant's employ about three months and was working most of the time on what was called a drop-hammer. The implement was also called a power hammer, but we gather from the record that, at the time of plaintiff's injury, it was

raised and lowered by a co-employee by means of a rope; but perhaps with the aid of a steam power. The matter of how the hammer was operated is a trifle obscure. It was a ponderous implement, weighing 1,500 or 1,600 pounds and was set in an iron or steel framework and moved up and down between two upright and parallel pillars. A rope was attached to a ring in the top of the hammer and carried around an overhead drum. The end of the rope hung down, and by it plaintiff's fellow-workman raised and lowered the hammer. This drum was kept covered with rosin and, as we understand, was hollow inside and filled with water intended to keep the rosin cool so that it would not get hot and slick from the friction of the rope. The evidence shows that if it grew slick the rope would slip over the surface of the drum and the hammer could not be held in place by the man who handled the rope. The hammer could be raised and lowered about eighteen inches and dropped on a heavy iron anvil or platform. It was used to press out pieces of galvanized and sheet iron. The operator of the hammer at the time of plaintiff's injury was a coservant, John Hoffman. Hoffman stood in front and on the north side of the machine and plaintiff behind or on the south side. Hoffman would put a piece of sheet iron in place, then raise the hammer about eighteen inches and let it drop on the iron and raise it again. When it was raised it was the duty of plaintiff, by using a little piece of iron about five inches long and one and one-half thick, to take the iron which had been pressed, off the die or anvil. Hoffman would pull on the rope, whereupon the hammer would go up about eighteen inches in the grooves in the pillars on either side, and at said elevation certain catches or clutches, one on each side, would catch and hold the hammer in place; pretty much, we understand, as the clutch or spring of an umbrella will catch and hold the

127 App—30

top after the ribs are shoved the proper distance along the handle. To release the hammer Hoffman would press down with his foot on a treadle, which movement served to draw the clutches inside the frame; whereupon the hammer would be let loose and it would descend along the grooves of the framework to the anvil. The two men, Hoffman and Rittell, had worked without incident during the forenoon of the day of the injury and had continued to work about half an hour after dinner. Hoffman had struck each piece of iron two blows of the hammer, but had discontinued that method and was striking only one blow. Suddenly when plaintiff was in the act of extricating a piece of iron from the anvil, the hammer fell on his right hand, mashing his thumb so that it had to be amputated just back of the nail and mashing his forefinger entirely off. The evidence for the plaintiff strongly tends to prove this casualty was due to the fact that the clutches in the upright pillars between which the hammer moved up and down were out of order and had been for quite a while. Sometimes they did not work properly; that is, one or the other of them would not protrude from its socket or recess in the pillar far enough under the base of the hammer, after the latter had reached the proper elevation, to support it. It was also in proof that the cavity or hollow inside the cylindrical drum was too small to hold enough water to keep the rosin, on the surface of the drum, cool, and that in consequence of this imperfection, the rosin would get hot and slippery and the rope, against the pull of the operator, would slip easily over the surface of the drum and the hammer could not be held above the anvil. Both these grounds of negligence are specified in the petition and both were submitted to the jury in instructions. Testimony was adduced for the plaintiff to prove the defective condition of the clutches and the defective size of the drum had been called to the attention of the defendant's foreman many

times by operators of the machine. A witness who had operated it before Hoffman took charge of it, testified that he had told the superintendent two or three times a week over a considerable interval, that the clutches were insecure and the drum too small to hold enough water. It is assigned for error that the trial court improperly submitted to the jury as a ground for a verdict for the plaintiff the insufficient size of the drum. It is the contention of the defendant that there was no evidence of this defect, but this position clearly is not maintainable, for there was abundant evidence of it. Hence the instructions did not broaden the issues as made, both by the pleadings and the proof.

It is further contended that the court erred in instructing on the measure of damages, in permitting a verdict for the loss of earnings which plaintiff had or would sustain in consequence of his injury. On this contention the argument is, too, that there was no evidence that his earning capacity was diminished. Plaintiff, as stated, was a young man twenty-one years old at the time of the accident, and as far as appears he made his living by work similar to that he was doing when hurt; he was not a mechanic, but a common laborer. He testified that he had done no work from the date of the injury to the time of the trial; that prior to said time he had been earning nine dollars a week, and in his opinion he was unable to do the same kind of work he had been doing theretofore. We think it is a matter of general knowledge that a laboring man who has the thumb and forefinger of his right hand mashed has suffered a diminution of earning power. Many kinds of labor at which he could earn money with two good hands, he would be less fit to perform with the thumb and finger of his right hand off; for instance, using a pick, a hammer and many other tools. The court properly permitted the loss of earnings to be taken into consideration in assessing damages.

The main assignment of error is that the amount of the verdict ($4,500) was excessive; and we are asked to grant a new trial or order a remission of a portion of the damages. According to the later decisions of the Supreme Court, the duty of revising excessive verdicts is imposed on courts of review and we must perform this duty, though we cannot see how our opinion about what would be reasonable damages for such an injury as plaintiff's is likely to be better than the jury's. Of course a verdict may be so excessive as to shock the conscience and show passion and prejudice on the part of the jury, but apart from instances of that kind, it is now the law that if an appellate tribunal considers an award of damages excessive, it must correct the verdict or reverse the judgment. [Chitty v. Railroad, 166 Mo. 435; s. c., 148 Mo. 64.] We find no proof in the record of the expense incurred by plaintiff for medical attendance, though it was shown that a surgeon attended him. He did no work after the accident to the date of the trial, but whether he was unable to work during the whole period, was not stated. The accident occurred July 27, 1906, and the trial was January 22, 1907. The members of this court have given this question careful attention and have taken into consideration the different elements which ought to enter into plaintiff's damages. According to our best judgment, the award of the jury exceeded due compensation for the injury sustained by the plaintiff. We have read cases in which verdicts not greater than the one in the present case and for very similar injuries, were held excessive. [Railroad v. Foby, 94 Ky. 220; Railroad v. Peavy, 34 Kas. 472; Gahagan v. Aermotor Co., 67 Minn. 252.] We think $3,000 would be adequate compensation to the plaintiff, and if he will remit within ten days from the delivery of this opinion, the sum of $1,500 from the judgment, the cause will stand affirmed; otherwise it will be reversed and remanded for a new trial. All concur.