tors and administrators cannot, merely by virtue of their offices, either prosecute or defend actions in the courts of other states. In some instances the disability has been removed by statute, but where that is not the case, and the representative has not removed the assets, or some portion of them, into this state, the rule of the common law is that which has been already stated."

The disability of the common law has not been removed by any statute to which our attention has been called. Matter of Webb, supra, was decided under section 121 of the Code of Procedure, which provided that, in case of the death of a party where the cause of action survives, the court "may allow the action to be continued by or against his representative or successor in interest." By section 757 of the Code of Civil Procedure it is provided that:

"In case of the death of a sole plaintiff or a sole defendant, if the cause of action survives or continues, the court must, upon a motion, allow or compel the action to be continued by or against his representative or successor in interest."

The codifications are identical in substance, and must be held to relate to representatives and successors over whom jurisdiction exists in the actions, and which do not include foreign representatives in actions at law. The rule invoked in the Webb Case seems to have been uniformly followed, both before and since the enactment of the Code of Civil Procedure. See Field v. Gibson, 56 How. Prac. 232; Murphy v. Hall, 38 Hun, 528; Ferguson v. Harrison, 27 Misc. Rep. 380, 58 N. Y. Supp. 850; Flandrow v. Hammond, 13 App. Div. 325, 43 N. Y. Supp. 143; Montgomery v. Boyd, 78 App. Div. 64, 72, 79 N. Y. Supp. 879; Slade v. Hale, 84 App. Div. 633, 82 N. Y. Supp. 1115; Lyon v. Park, 111 N. Y. 350, 18 N. E. 863; Johnson v. Wallis, 112 N. Y. 230, 19 N. E. 653, 2 L. R. A. 828, 8 Am. St. Rep. 742; Hopper v. Hopper, 125 N. Y. 400, 26 N. E. 457, 12 L. R. A. 237. The order should be reversed, and the motion denied.

Order reversed, with $10 costs and disbursements, and motion denied, with costs. All concur.

(99 App. Div. 1)

JONES v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. DAMAGES—PERSONAL INJURIES—RULE FOR ASCERTAINMENT.
In cases of personal injury plaintiff can recover his reasonable expenditures for medical services, medicines, and attendance, and also reasonable compensation for the pain occasioned by his injuries and for the scars and deformities resulting therefrom, to which amount must be added a sum sufficient to compensate him for his loss of power to earn money.

2. SAME—PROVINCE OF JURY—SETTING ASIDE VERDICT.
A verdict in a personal injury action will not be set aside unless the result of passion or prejudice, or some improper influence, evidenced by a verdict out of all proportion to the injuries received.

3. SAME—AMOUNT OF VERDICT.
In an action for personal injuries the evidence showed that plaintiff at the time of the accident was about 32 years old, and was receiving a

¶ 1. See Damages, vol. 15, Cent. Dig. §§ 222, 233–243.

salary as a mail clerk of $1,100 a year, which was likely to be increased. His injuries were such that he could not return to the mail service, and he had done no work since the accident, and it did not appear whether he could obtain any suitable employment in his then physical condition. He had incurred a liability of $324 for medical services and attendance. Several bones were broken, in consequence of which he lay on a cot for four weeks, and had one leg in a plaster cast for six weeks longer, and had suffered excruciating pains. The permanent injuries consisted in facial disfigurement, a shortening of one leg, a loss of the sense of smell, and inability to breathe freely through the nose, and a liability to headaches and stomach derangement. *Held*, that a verdict for $15,000 was not excessive.

Appeal from Trial Term, Franklin County.

Action by James R. Jones against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

The verdict and judgment rendered was for $15,000.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Martin E. McClary, for appellant.

M. E. & G. W. Driscoll (M. E. Driscoll, of counsel), for respondent.

CHASE, J. On the 9th day of May, 1903, the plaintiff, while engaged in the performance of his duties as a United States railway mail clerk, in a mail car connected with one of the defendant's trains, was injured in a head-on collision, which occurred on the Mohawk & Malone division of the defendant's road. This action is brought to recover damages for such injuries.

It is conceded that the defendant is liable to the plaintiff for compensatory damages arising from the injuries received by him, and the only question on this appeal is as to whether the amount of the verdict is excessive. The collision occurred about 3 o'clock in the afternoon at a point on said road about 115 miles south of Malone. Plaintiff was taken to his home in Malone in a caboose attached to an engine, but he did not arrive at his home until between 12 and 1 o'clock the following morning. His injuries were severe and painful. He had six or seven small wounds upon his forehead, some of which were superficial, and some extended to and through the immediate covering of the bone. He had a compound fracture of the nasal bones. They were both fractured, and the nose was displaced, and driven to the right. He had a severe and extensive contusion upon his left hip, reaching to the spine. He had a compound comminuted complicated fracture of the lower portion of the right leg close to the ankle joint. The bones were crushed, and the physicians could feel the fragments, and one piece of bone was found protruding through the plaintiff's shoe. There were two external wounds reaching nearly around the injured leg, and also injuries to the muscles, nerves, and blood vessels about the ankle. The smaller bone of the right leg was also broken at a point a few inches above the place of the principal injury. The cuts on the defendant's forehead and the injuries to the nose have healed. His face is scarred and his nose is crooked. There was nothing the matter with him before the accident, and he was a strong, healthy man, who had never been

sick. · He never had headaches before the injury, but now he has headaches nearly every day, and at times a deranged stomach. His sense of smell and ability to breathe through the nose have been impaired. In speaking, his voice now has a nasal twang. The left hip was dark and dark brown for a long time, and is still discolored. The right leg is now one-half to three-fourths of an inch shorter than the other. The tissues about the ankle joint are stiffened. The heel cord is shortened, and he cannot get his heel down level with the ball of his foot.

From the evidence the jury may have found that, notwithstanding proper treatment by the physicians who attended the plaintiff, the bones or parts of bones at the injured parts have slipped about, and not healed in their natural position; that the inner malleolus was broken, and that it is not now in place, and that there are adhesions which cannot be overcome without a further operation. Plaintiff laid on a cot for four weeks, and thereafter his left leg was placed in a plaster cast for six weeks. ·At the time of the trial he could balance himself without crutches, and could walk with crutches. His physician testified:

"It is reasonably certain that in the ordinary course of nature the present condition will continue. That is my judgment. It may possibly improve a little. In the ordinary course of things, it will not improve, and his present condition substantially will be permanent."

Although there is no direct evidence of any injury to his right arm, yet the plaintiff testifies:

"There is something the matter with my right arm. At times I will have a book or some object in my hand, and, before I know it, it is on the floor. I cannot tell the reason why. I do not know, but simply my grip; it relaxes, and the articles drop away from me. That has happened a great many times since then. It relaxes involuntarily. I did not discover this trouble until I got off from the cot at the end of four weeks. It has continued up to the present time."

At the time of the accident he was about 32 years old. He has a wife and one small child. He had been employed as a United States mail clerk for 12 years. He obtained his position in the mail service through a competitive examination, and at first received a salary of $800 per year. His pay was increased from time to time, and at the time of the collision he was receiving $1,100 per year. He was not in the highest class in the railway mail service, and a person in such service is retained as long as he does his work properly, and is promoted from time to time according to efficiency. His injuries are such that he cannot return to the mail service, and he has not done any work since the accident.

In cases of personal injury there is no rule by which compensatory damages may be computed with accuracy. Plaintiff is entitled to recover his reasonable expenditures for medical services, medicines, and attendance, and also a reasonable amount in compensation for the pain and suffering occasioned by his injuries, and for the scars and deformities resulting therefrom, to which amount must be added a sum sufficient to compensate him for his loss of power to earn money. The verdict of juries and determination of courts in other cases cannot be safely relied upon as a rule or guide in determining whether a verdict is excessive, as each case necessarily depends upon facts and circumstances

applicable to or surrounding it. It is the province of the jury to fix the amount of the damages in each case, and it has been repeatedly stated by the courts that a verdict should not be set aside unless the jury has been misled by passion or prejudice, or coerced by some improper influence in fixing the amount of their verdict. Where it is plain that the amount of the verdict is out of all proportion to the injuries received, the court will assume that the jury misunderstood the rights of the parties or the effect of the evidence before them in determining the amount of their verdict, or that the verdict was affected by overpowering sympathy or improper influences. An examination of the record does not disclose that anything occurred on the trial that we can say improperly affected or influenced the judgment of the jury. The defendant having conceded that it was liable to the plaintiff for the injuries received by him, neither the details of the defendant's negligence nor the harrowing scenes connected with the collision itself were before the jury. The question left to the jury was a simple, single question, in no way complicated by other issues. It was fairly presented to them by the court apart from any apparent influence that would lead them to do more than fairly ascertain to the best of their judgment the true answer to the question presented to them. The plaintiff has become liable to pay at least $324 for medical services and attendance. He suffered excruciating pain, and is scarred and deformed. It is practically conceded that his injuries are such that he cannot return to the service in which he has been engaged since his majority. His loss of such position is a serious one. He has not done any work since his injury, and it does not appear when or where he can obtain employment suitable for him in his present physical condition. The extent of his earning power in some new position or business to be hereafter obtained by him is a matter of great uncertainty. The verdict of the jury, so far as can be ascertained from the record, was the unanimous judgment of men honestly and fairly attempting to perform their duty to the best of their ability, and we cannot say that it should be set aside.

The judgment and order should be affirmed, with costs. All concur, except HOUGHTON, J., who votes to reduce verdict to $10,000.