RYSDORP, Respondent, vs. THE GEORGE PANKRATZ LUMBER COMPANY, Appellant.

*March 19 — April 7, 1897.*

*Master and servant: Negligence: Special verdict.*

1. In an action for a personal injury to a foreman in the defendant's sawmill, caused by the breaking of a nut which supported the sleeve or covering of the band-saw, thus letting such sleeve fall upon the plaintiff's hand, which he had put under such sleeve to examine the machinery instead of using the manhole provided for that purpose, which was safe, the jury by special verdict found that the nut was broken prior to the accident; that with it so broken the machine was not reasonably safe for use in the mill; that its condition could have been discovered by the defendant by the exercise of ordinary care; and that the plaintiff was not negligent.. *Held*, that such verdict would not support a judgment for the plaintiff, for the reason that it failed to find that the use of the machine in that condition was negligence as against the plaintiff, or that such negligence was the cause of the accident.

2. Such verdict was also inconsistent in that it, in effect, held the defendant to a higher degree of care as to its machinery than the plaintiff, on whom it relied as an expert.

3. Upon the evidence, the defendant was free from negligence, but the plaintiff must be held to have been guilty of negligence in putting his hand under the sleeve to do work there instead of using the manhole which had been provided by the defendant, where it would have been safe, and, knowing the danger, he by so doing assumed the risk.

APPEAL from a judgment of the circuit court for Oconto county: S. D. HASTINGS, JR., Circuit Judge. *Reversed.*

The action is for a personal injury. The defendant owned and operated a sawmill. The plaintiff was foreman of defendant's mill. He was thirty-nine years old, and an experienced millwright and foreman. Defendant's mill was. what is called a single-band sawmill. The frame which supports the saw, and by which proper tension is given to it, is. a hollow cylinder of iron, in two parts. The outer and upper portion, which is called the sleeve, covers the upper

part of the lower section, and rests upon a shoulder upon such lower section. The saw passes over a wheel or pulley, which is supported by this cylinder, and around another similar wheel, which is beneath the floor of the mill. In order to give proper tension to the saw, the upper or sleeve portion of the cylinder, with the pulley and shafting, is raised by means of a jackscrew. This jackscrew works in a nut in the lower end of the sleeve. It is worked by a lever. The sleeve, with its burden, weighs about three tons. There is a slot in the lower end of the sleeve some eighteen inches in length and several inches in width. When the sleeve is raised, a space is opened into the cylinder above the end of the lower portion through which a man's arm can be thrust. This slot was intended to give space for levers or bars connecting with appliances within the cylinder for the regulation of the tension to pass. In the base of the lower section of the cylinder were what are called "manholes," for the purpose of admitting the hand for whatever needful purpose of adjusting weights on the weight rod or other appliances within the cylinder. This was a perfectly safe place for the introduction of the hand for such a purpose. The plaintiff was acquainted with this machinery, and the purpose of these holes. On the morning of the accident, when plaintiff came into the mill, he found two men at the lever, trying to turn the jackscrew, in order to put tension on the saw. Complaint was made that it worked hard. Some one suggested that the weights were caught inside the cylinder. Plaintiff at once put his hand through the slot, and found the weight rod free. He called out that the weights were not caught. The men surged upon the lever. The sleeve fell, and the plaintiff's right hand was severed from his arm. The strain upon the screw had broken the flange from the nut, and taken away its support from the sleeve.

There was a special verdict, which finds (1) that the nut was cracked and broken prior to the time of plaintiff's acci-

dent; (2) that with the nut so cracked and broken the machine was not reasonably safe for use in the mill; (3) that the defendant could have discovered this unsafe condition of the machine by the exercise of ordinary care; (4) that the plaintiff could not have discovered this unsafe condition of the machinery by the exercise of ordinary care; (5) that there was no contributory negligence on the part of the plaintiff; and (6) damages assessed at $8,000. Judgment was entered on this verdict in favor of the plaintiff, from which the defendant appeals.

*E. C. Eastman,* for the appellant, argued, *inter alia,* that the plaintiff assumed the risk of the injury received by him. The defendant had furnished him a practically safe way for reaching and adjusting the machinery, and he, with knowledge of the danger, chose an unsafe way. *Amerine v. Porteous,* 105 Mich. 347; *Welsh v. Argyle,* 89 Wis. 649. The alleged negligent act of the defendant was not the proximate cause of the plaintiff's injury. No such injury could reasonably have been anticipated therefrom. There was nothing about the usual operation of the machinery which would naturally require a workman to put his hand in the slot where the plaintiff's was when injured. *Block v. Milwaukee St. R. Co.* 89 Wis. 371, 378; *Huber v. La Crosse City R. Co.* 92 id. 636, 646, 648; *McGowan v. C. & N. W. R. Co.* 91 id. 147, 155; *Atkinson v. Goodrich Transp. Co.* 60 id. 141, 156; *Harris v. Cameron,* 81 id. 239. The special verdict does not cover all the material issues.

For the respondent there were briefs by *Greene, Vroman & Fairchild,* and oral argument by *C. E. Vroman.*

NEWMAN, J.   Two principal errors are claimed: (1) That the special verdict is insufficient to support the judgment; and (2) that the evidence fails to establish defendant's negligence.

The criticism on the verdict is that it fails to find that the unsafe condition of the mill was negligence, or that it

caused plaintiff's accident.  It is elementary that, in order to make the defendant liable, the unsafe condition of the mill must be by fault of the defendant, and must have been the cause of the accident.  Both these elements must be found as facts by the proper trier of the issues of fact; if in doubt upon the evidence, by the jury,— if not in doubt upon the evidence, then by the court.  If the proper inference to be drawn from the undisputed facts is disputable, then the inference is to be drawn by the jury, and the court cannot supply the want of it.  The verdict must find all the facts essential to the plaintiff's right of recovery, and in his favor, or the plaintiff cannot have judgment upon it.  It is essential that the fault of the defendant shall have been such as, in the circumstances, to be negligence.  It is found only that "the machine was not safe to be used in the mill." That does not necessarily establish that the use of it was negligence, as against the plaintiff.  The finding is equivocal. Apparently its unsafety consisted in the danger that it would wreck the machine or mill.  It cannot be said that the danger that some person would be injured by it was conspicuous.  So this inference was to be drawn by the jury. If it were found that the use of the machine in its actual condition was negligence, the liability of the defendant is not yet established until it is further found that such negligence was the cause of the accident.  Negligence is the cause of the accident, in a legal sense, only when it is of such a character as that men of ordinary prudence, judgment, and experience ought reasonably, in the light of the attending circumstances, to have foreseen that it was likely to produce such an accident.  *Klatt v. N. C. Foster L. Co.* 92 Wis. 622. Surely, the incidence of such an accident was not so plainly imminent as that the court can say, as matter of law, that the defendant was bound to foresee it.

The special verdict is insufficient to support the judgment. The verdict is, in some respects, incongruous.  It finds that

Rysdorp vs. The George Pankratz Lumber Co.

the defendant could have learned of the defect in the machine by the exercise of ordinary care, but that the plaintiff could not. This really seems to apply one standard of care to the defendant, and another, and a more liberal one, to the plaintiff. It is argued that the fact that the jackscrew worked hard should have been sufficient notice to the defendant that the machine was out of order, but the same fact is not deemed to be sufficient notice to the plaintiff; while, in fact, the plaintiff is the only person about the mill who is shown to have been an expert in mill machinery, and, as might be supposed, the one most likely to apprehend the cause of the difficulty. He also knew the purpose of the slot, that it was for room for the lever to travel up and down in, and for no other purpose. He also knew the purpose of the manhole, that it was "for getting in there in case you want to do any work in there." He knew also that when his hand was through the manhole for any purpose no injury could happen to him by the falling of the sleeve. He knew, at the time, that he could, with entire safety, make the investigation which he wished of the condition of the weights and rod through the manhole. But he says he did not think of it. He knew the safe way which had been provided for the purpose, but, from want of thought, took a more convenient, but less safe, way. It certainly seems that when the defendant had provided a safe way, which was known to the plaintiff, it had done its full duty toward him, and that his choice of a different way was at his own risk. *Welsh v. Argyle*, 89 Wis. 649. His forgetfulness, or want of thought, was not the fault of the defendant, but rather his own misfortune. Certainly, the plaintiff must be held to have assumed the risk of all such dangers of the employment as he understood or could learn by the exercise of reasonable attention. The evidence fails to establish the defendant's negligence.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.