(May 9, 1910.)

# ED. MALONEY, Respondent, v. WINSTON BROS. COMPANY, Appellant.

## [111 Pac. 1080.]

INSTRUCTIONS—PERSONAL INJURY—HAZARDOUS UNDERTAKING—ASSUMPTION OF RISK—DUTY OF MASTER—DUTY TO MAKE PLACE OF WORK SAFE—PROOF OF NEGLIGENCE—SUFFICIENCY OF EVIDENCE—EXCESSIVE DAMAGES.

(Syllabus by the court.)

1.  Instructions examined, considered and *held* not to be erroneous,

2.  Where a laborer seeks and obtains employment at a hazardous and dangerous task and which must necessarily be prosecuted in a dangerous place, he thereby assumes the ordinary risks incident to the employment and attendant on the place where the work is prosecuted, but he does not thereby assume any additional burden of risk superimposed by reason of the master's neglect of the duty that rested upon him to have the place inspected and maintained in a reasonably safe condition, as a place of the kind should be maintained in which employees are to prosecute their work.

3.  In the case of a hazardous work like driving a railroad tunnel through the mountain, an increased risk is assumed and an increased duty is imposed by law on both the master and servant proportionate to the dangers of the place and the risks of the employment—on the master to exercise increased care and diligence in maintaining the place in as safe a condition as the nature of the work will permit, and upon the servant to either assume or avoid patent and obvious dangers and those necessarily incident to the work and the place in which the work is being prosecuted.

4.  It is the established rule of law that the liability of the master depends upon the character of the act in the performance of which the injury arises, and not upon the grade or rank of the employee or fellow-servant to whom the negligent act is traceable.

5.  In an action for personal injuries received by and on account of the negligence of the master, negligence must be shown, and this may be done by positive testimony of the commission of a wrongful act by the master or the neglect by him to discharge a positive duty, or it may be shown by proof of the conditions of the place in which the master placed the servant or the attendant circumstances surrounding the occurrence and the happening of the thing which caused the injury.

6. Where the servant is under the immediate direction of a superior employee or a vice-principal and performs each task or duty at the time and in the manner directed by his superior, and the servant has no discretion in the matter of inspecting or making safe the place in which he is to work, he has a right to assume that the superior or vice-principal has examined and inspected the place in which he is set to work and has found it in a reasonably safe condition, and in such case the servant is only chargeable with the duty of taking notice of conditions as he sees them and those dangers that are patent and obvious.

7. Where the master is engaged in driving a railroad tunnel and has a large number of men engaged in drilling, blasting and shoveling away the rock and earth, it is the duty of the master to take reasonable precaution for the safety of the men, and to that end to have some person intrusted with the duty of examining and inspecting the place after shots have been fired, directing the manner and method of removing loose rock or earth from the walls and roof, and making the place reasonably safe for the men who are to work therein.

8. Where an injury has been received by the servant on account of the negligence of the master, damages should be computed and ascertained and awarded on the basis, as nearly as possible, of compensating the servant for the pain, suffering and loss he has sustained and will sustain in the future on account of the injury; and he should be placed, as nearly as it is possible to estimate, in as good a position as he was before the injury was inflicted.

APPEAL from the District Court of the First Judicial District, for Shoshone County.    Hon. W. W. Woods, Judge.

Action by the plaintiff for damages for personal injury. Judgment for plaintiff and defendant appealed.    Judgment *modified* and *affirmed*.

Kerns & Ryan, for Appellant.

There is absolutely no evidence to show that anyone was negligent and that it was not one of those accidents incident to any business which cannot with reasonable prudence be foreseen.    The plaintiff must make his case.    He has failed to do so.    (*Reino v. Montana Mineral Land Devel. Co.*, 38 Mont. 291, 99 Pac. 853; *Hardesty v. Largey Lumber Co.*, 34 Mont. 157, 86 Pac. 29; *Holt v. Spokane R. Co.*, 4 Ida. 443,

40 Pac. 56; *Birsch v. Citizens' Electric Co.,* 36 Mont. 574, 93 Pac. 940.)

It is incumbent on him to show affirmatively all the elements of a right to recover, to prove all the facts which constitute or make apparent the alleged negligence of the master, and that it was the proximate cause of the injury. (Labatt, Master and Servant, sec. 832; *Hamelin v. Malster,* 57 Md. 287; *A. T. & S. R. Co. v. Ledbetter,* 34 Kan. 326, 8 Pac. 411; *Patton v. Texas & P. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. ed. 361; *Stearns v. Ontario Spinning Co.,* 184 Pa. 519, 63 Am. St. 807, 39 Atl. 292, 39 L. R. A. 842; 20 Am. & Eng. Ency. of Law, 87, 88; *Kincaid v. O. S. L. Ry. Co.,* 22 Or. 35, 29 Pac. 3; *Alcorn v. Chicago Ry. Co.,* 108 Mo. 81, 18 S. W. 188; *Baltimore etc. Ry. Co. v. State,* 75 Md. 152, 32 Am. St. 372, 23 Atl. 310; *Gibson v. Erie Ry. Co.,* 63 N. Y. 449, 20 Am. Rep. 552; *Minty v. U. P. R. Co.,* 2 Ida. 471, 21 Pac. .660, 4 L. R. A. 409; *Woelflen v. Lewiston-Clarkson,* 49 Wash. 405, 95 Pac. 493.)

Where the place that an employee is to work is a room in a mine, or tunnel, the place is provided in the progress of the work by the employees themselves. It is made secure or otherwise by the way in which they perform their respective duties. (*Waddell v. Simoson,* 112 Pa. 567, 4 Atl. 725; *Shaw v. Mining Co.,* 31 Mont. 138, 77 Pac. 515; *Cummings v. Reduction Co.,* 26 Mont. 434, 68 Pac. 852; *Axtell v. Northern Pac. Ry. Co.,* 9 Ida. 392, 74 Pac. 1075; *Zeinke v. N. P. Ry. Co.,* 8 Ida. 54, 66 Pac. 828.)

The master is not required to provide a safe place in cases in which the very work upon which the servant is engaged is of a nature to make the place where it is done temporarily insecure, but in such cases the servant assumes the increased hazard. (*Gulf, C. & S. F. Ry. Co. v. Jackson,* 65 Fed. 48, 12 C. C. A. 507; *McDonald v. Buckley,* 109 Fed. 290, 48 C. C. A. 372; *Davis v. Trade Dollar Cons. Min. Co.,* 117 Fed. 122, 54 C. C. A. 636; *Larsson v. McClure,* 95 Wis. 533, 70 N. W. 662; *Russell Creek Coal Co. v. Wills,* 96 Va. 416, 31 S. E. 614; *Petaja v. Aurora Iron Min. Co.,* 106 Mich. 463, 58 Am.

St. 505, 64 N. W. 335, 66 N. W. 951, 32 L. R. A. 435; *Floyd v. Sugden,* 134 Mass. 563.)

"The foreman of a gang of laborers employed by a contractor is a fellow-servant of one of the gang." (*Anderson v. Winston,* 31 Fed. 528; *McDonald v. Buckley,* 109 Fed. 290, 48 C. C. A. 372; *Armour v. Hahn,* 111 U. S. 318, 4 Sup. Ct. 433, 28 L. ed. 440; *Chicago & Ohio Coal & Car Co. v. Norman,* 49 Ohio St. 598, 32 N. E. 857; *Beesley v. F. W. Wheeler Co.,* 103 Mich. 196, 61 N. W. 658, 27 L. R. A. 266; *Alaska Treadwell M. Co. v. Wheelan,* 168 U. S. 36, 18 Sup. Ct. 40, 42 L. ed. 390; *Baltimore & O. R. Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 773; *Hough v. Texas & P. R. Co.,* 100 U. S. 213, 25 L. ed. 612.)

Gray & Knight, and John H. Wourms, for Respondent.

It is the absolute duty of the master to provide a reasonably safe place in which the servant shall work, having regard to the kind of work, and the conditions under which it must necessarily be performed. (*Bunker Hill & Sullivan M. & C. Co. v. Jones,* 130 Fed. 813, 65 C. C. A. 363; *Union Pac. Ry. Co. v. Jarvi,* 53 Fed. 65, 3 C. C. A. 433; *Western Coal Min. Co. v. Ingraham,* 70 Fed. 219, 17 C. C. A. 71; *Railroad Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 773; *Mather v. Rillston,* 156 U. S. 391, 15 Sup. Ct. 464, 39 L. ed. 464; *Rowden v. Schoenherr-Walton M. Co.,* 136 Mo. App. 376, 117 S. W. 695; *Cinkovitch v. Thistle Coal Co.* (Iowa), 121 N. W. 1036; *Westerlund v. Rothschild,* 53 Wash. 626, 102 Pac. 765; *Peirce v. Kile,* 80 Fed. 865, 26 C. C. A. 201; *Trihay v. Brooklyn Lead Min. Co.,* 4 Utah, 468, 15 Morr. Min. Rep. 535, 11 Pac. 612; *Ross v. Shanley,* 185 Ill. 390, 56 N. E. 1105.)

The master is liable for the negligence of an employee who represents him in the discharge of his personal duties to his servants, and beyond that he is liable only for his own personal negligence. (*Larsen v. Le Doux,* 11 Ida. 49, 81 Pac. 600; McKinney on Fellow-servants, sec. 23; *Bunker Hill & Sullivan Min. & Con. Co. v. Jones, supra; Hough v. Texas & Pac. Ry. Co.,* 100 U. S. 213, 25 L. ed. 612; *Ford v. R. Co.,* 110 Mass. 240, 14 Am. Rep. 598.)

The facts in this case show that there was nothing to indicate to the plaintiff from such inspection as he could or was permitted under the rules and practice of the tunnel to make that he was assuming any such danger as the accident showed existed. (*Texas & Pac. Ry. Co. v. Archibald,* 170 U. S. 665, 18 Sup. Ct. 777, 42 L. ed. 1188; *Choctaw & R. Co. v. McDade,* 191 U. S. 64, 24 Sup. Ct. 24, 48 L. ed. 96; *Union Pac. Ry. Co. v. O'Brien,* 161 U. S. 451, 16 Sup. Ct. 618, 40 L. ed. 766; *Texas & Pac. Ry. Co. v. Behymer,* 189 U. S. 468, 23 Sup. Ct. 622, 47 L. ed. 905; *Texas & Pac. R. Co. v. Swearingen,* 196 U. S. 51, 25 Sup. Ct. 164, 49 L. ed. 382; *Choctaw etc. Co. v. Holloway,* 191 U. S. 334, 24 Sup. Ct. 102, 48 L. ed. 207; *Chicago, Great Western R. Co. v. McDonough,* 161 Fed. 657; *Harvey v. Texas & Pac. Ry. Co.,* 166 Fed. 385; *Central Coal & Coke Co. v. Williams,* 173 Fed. 337; *Island Coal Co. v. Risher,* 13 Ind. App. 98, 40 N. E. 158; *Diamond Block Coal Co. v. Cuthbertson,* 166 Ind. 290, 76 N. E. 1060.)

A miner does not assume the risk of the caving in of the roof of a mine. (*Bunker Hill etc. Co. v. Schmelling,* 79 Fed. 263, 24 C. C. A. 564.)

"A new trial will not be granted on account of the absence of witnesses where it is apparent that the witnesses were known at the time of the trial but could not be found, and no continuance is applied for on that ground." (*State v. Cook,* 13 Ida. 45, 88 Pac. 240.)

AILSHIE, J.—This action was prosecuted for the recovery of damages for personal injuries received by the plaintiff while working in what is known as the St. Paul pass tunnel, which was being cut through the Bitter Root mountains for the use of the Chicago, Milwaukee & St. Paul Ry. Co. The east end of this tunnel starts a short distance from the town of Taft, in Montana, while the west end of the tunnel is in Idaho. The plaintiff recovered judgment for $15,000 and defendant moved for a new trial and its motion was denied, and it has appealed from the judgment and order denying the motion.

This tunnel was about twenty-four feet wide by thirty feet high. The work was being prosecuted by four gangs of men, who were engaged in various classes of work and each gang was under a separate shift boss. Two gangs of men worked at a time. The work was prosecuted in two sections. The upper half of the tunnel, known as "the heading," was driven by one gang of men, and a couple of hundred feet back of this work another gang was engaged in working on what is known as "the bench," this work consisting in excavating the lower half of the tunnel.

The respondent was employed as a machineman in operating an air drill and was working on the heading. Six drills were used at a time across the face of the tunnel. Each drill had two men, a machineman and a helper. After the holes were drilled they were loaded and fired. It was the custom that after the blasts were fired the shift boss would precede the gang of men to see that the smoke had sufficiently cleared away to begin work, and he was followed by the men. It appears to have been the duty of the shift boss to "sound" the overhanging rocks and inspect the place, and see if it was necessary to "bar down" any loose rock or earth before the men began to work. It was then his custom to call the men and set them to work, telling each one where to work and what to do. Respondent had been in the employ of appellant about eighteen days prior to his injury. The timbering for the heading or upper tunnel work was of a temporary character, and was ordinarily extended as near up to the face of the tunnel as possible in order to prevent rock and earth falling from above and injuring the men. The timbering overhead was up to within about six or eight feet of the face of the heading at the time of this accident.

The accident occurred in the heading on the morning of June 21, 1908. The plaintiff went on duty at 6:30 A. M. Blasts had been fired some time previous to this, and the loose rock and earth called "muck" had to be shoveled back before the men could set their machines. When respondent went on duty the shift boss told him to shovel back the rock so that he could set his machine. The work appears to have

been progressing in the greatest of haste, and the men worked in fifteen minute relays. One gang would shovel fifteen minutes and thereupon the other gang would take their place and shovel for a like period. Respondent was shoveling on a second relay when from a half-ton to a ton of rock fell and caught his left leg, crushing the ankle, breaking the fibula about one inch and three-quarters above the ankle joint, thereby inflicting what is designated as a "Pott's Fracture." The respondent was taken to the hospital, where he remained for three months and three days, and thereafter returned to his work, and after an attempt lasting through three days to continue his work, found that he was unable to do so, suffered great pain and was obliged to quit. It appears that the injury is permanent. The fracture caused an eversion or turning out of the foot, resulting in shortening the left leg; and the evidence discloses that it will prevent him from doing a great deal of walking.

A great many errors are assigned, and we will endeavor to deal with them in groups rather than singly. The first seven are directed at the admission and rejection of evidence. There was no error in these rulings of the court. The next group of assigned errors have reference to the giving and refusing instructions. There was no substantial error committed in these respects. Instruction No. 5 given by the court is particularly objected to on account of the following language which it contained: "It is sufficient to say, however, that the law does not under any circumstances exact from the servant the use of diligence in ascertaining such defects, but charges him with knowledge of such only as are open to his observation; beyond this he has the right to assume without inquiry or investigation that his employer has discharged his duty of furnishing him with a reasonably safe place in which to perform his duties." This part of the instruction is too broad, in that it tells the jury, "that the law does not under any circumstances exact from the servant the use of diligence in ascertaining such defects." This is not the law in all cases of damages. It is, however, the law under the facts of this case, and there was consequently no error in the court so

instructing the jury. It should also be remembered that this instruction opened with the statement, "that it is a general rule that a servant entering into employment which is hazardous assumes the usual risks of the service and those which are apparent to ordinary observation, and when he accepts or continues in the service with knowledge of the character of structures from which injury may be apprehended, he also assumes the hazard incident to the situation." From this it will be observed that the court told the jury that the employee assumed the usual and ordinary risks of a hazardous employment when he entered on this work. This instruction must be read in connection with the other instructions to which appellant objects.

Instruction No. 8 was eminently correct. It deals with the nature of the plaintiff's duties and of the scope of power and authority delegated by the master to the shift boss. No. 12 advised the jury that the employee "has a right to assume, in the absence of apparent defects, that a place in which he is ordered to work by a shift boss is safe and he is not bound to inspect it for the purpose of discovering a latent defect," etc. This was correct.

There was no error in instructions 6 and 13. Complaint is made of instruction No. 9, and appellant urges that this instruction in effect told the jury that the defendant would be liable to the plaintiff in any event if it failed to properly timber, brace or support the grounds, regardless of the question of its exercise of due care. Instruction No. 9 is not capable of such a construction. This instruction among other things says: "If you find that there was negligence on the part of the master in failing to provide a safe place in which plaintiff had to work, . . . . which by a reasonable inspection the defendant could have known was loose and liable to cave or fall," etc., that the defendant will be liable. This instruction specifically limited the liability to negligence on the part of the company in exercising reasonable care and due diligence. .

We find no error in the other instructions given.

Defendant's requested instruction No. 23 might properly have been given. It was intended to inform the jury that if they found for the plaintiff, in measuring the damages to which he was entitled they should take into consideration the fact that he was not wholly disabled, and the further question as to whether or not his disability was entirely permanent. The substance of this instruction, however, was covered by the instructions given, and there was no prejudice to the defendant in the refusal of the court to give this instruction. The instruction was substantially covered by instruction 15 given by the court.

The other assignments of error have reference either directly or indirectly to the sufficiency of the evidence to sustain the verdict and judgment, and will be fully covered by a consideration of the single question as to the sufficiency of the evidence in this case to support the judgment.

It is contended by the appellant that plaintiff undertook an extrahazardous task, and that the ordinary risks of such a service were consequently assumed by him. This position is correct to the extent that he assumed the risk incident to the employment, but he did not assume any additional burden of risk superimposed by reason of the master's neglect of the duty that rested upon him to have the place inspected and maintained in a reasonably safe condition as a place of the kind in which the employee might work. (*Bunker Hill & Sul. M. & C. Co. v. Jones,* 130 Fed. 813, 65 C. C. A. 363; *Ohio Copper M. Co. v. Hutchings,* 172 Fed. 203, 96 C. C. A. 653; *Rowden v. Schoenherr-Walton M. Co.,* 136 Mo. App. 376, 117 S. W. 695.) In the case of a hazardous work like driving a tunnel, such as the one where respondent was working, an increased risk is assumed and a like increased duty is imposed by law on both the master and the servant proportionate to the dangers of the place—on the master to exercise increased care and diligence in maintaining the place in as safe a condition as the nature of the work will permit, and upon the servant to assume or avoid patent and obvious dangers and those necessarily incident to the work and place in which the work is being prosecuted. (*Trihay v. Brooklyn*

*Lead Min. Co.,* 4 Utah, 468, 11 Pac. 612, 15 Morr. Min. Rep. 535; *Union Pac. Ry. Co. v. Jarvi,* 53 Fed. 69, 3 C. C. A. 433.) The law assumes that when these reciprocal duties have been faithfully discharged no injury of which the law takes cognizance will occur, but the moment an accident does occur the presumption arises that either the master or servant has been negligent, or that both have contributed to the injury.

It is contended by the appellant that if the injury in this case was caused by any negligent act, it was negligence of a fellow-servant for which the master was not liable. Now, it is a well-established rule of law, which has been adopted in this state, that the liability of the master depends upon the character of the act in the performance of which the injury arises and not upon the grade or rank of the employee or fellow-servant to whom the negligent act is traceable.

In *Larsen v. Le Doux,* 11 Ida. 49, 81 Pac. 600, this court adopted the following rule with reference to the liability of the master in such cases: "If the act or omission that caused the injury was one pertaining to the duty the master owed to his servant, he is responsible for the manner of its performance without regard to the rank of the servant or employee to whom it is intrusted. But if it is one pertaining to the duty of an operative, the employee performing it is a fellow-servant with his colaborers whatever his rank, for whose neglect the master is not liable."

It only remains to determine whether or not the duty of making the place at which respondent was working reasonably safe rested upon the master in this case or was one of the duties of respondent and his fellow-servants—the machinemen and their helpers. The evidence disclosed by the record in this case tends strongly toward the conclusion that respondent and the other machinemen and their helpers were under the absolute and direct control and supervision of the shift boss, and that they had no discretion either as to what they should do or the manner in which they should do the tasks assigned them. They were told by the shift boss when to go into the heading and begin work after shots had been fired. They were directed to the specific place to set up their machines.

They were told when to bar down loose rock and when to shovel muck. They were shown by the shift boss the particular direction in which to point the holes and the character of load to use in each hole. The evidence also tends to show that an employee there, who offered any suggestion as to the method of doing a piece of work or protested against entering upon a special task or made any protest as to the safety of the place, incurred the risk of being immediately discharged from the works.

It seems to have been the custom of the shift boss to enter and inspect the roof and walls for the purpose of ascertaining the safety of the place before calling the men to put them to work. If he found any place where loose rock or earth needed barring down or the roof needed trimming, he directed the men in doing that work before they commenced shoveling muck or setting up their machines or drilling.

The evidence does not show either that an inspection was or was not made prior to the accident. Respondent testified that it looked safe so far as he could see when he went to work, but appellant does not show that any inspection had been made. The rock and earth which fell on respondent appears to have come from the roof of the tunnel, and the witnesses say that if the roof had been sounded, that it is reasonably certain that the accident would have been averted. They testify as to the nature of the formation and probability of a sounding having located this danger and enabled the men to bar it down before commencing to muck.

It is contended by appellant that there is no proof of any negligent act or conduct on the part of the master which caused or contributed to the injury sustained. It is true, as contended, that in all such cases negligence must be shown in some manner. (1 Thompson on Negligence, secs. 28, 50, 59; *Rysdorp v. Geo. Pankratz Lumber Co.*, 95 Wis. 622, 70 N. W. 677; *Reino v. Montana Min. Land Dev. Co.*, 38 Mont. 291, 99 Pac. 853; *Holt v. Spokane Ry. Co.*, 4 Ida. 443, 40 Pac. 56.) This may be done by positive testimony of the performance of a negligent act by the master or the neglect by him to discharge a positive duty. It may also be shown by the condi-

tions of the place in which he placed the servant, or the attendant circumstances surrounding the happening of the event which caused the injury.

Under the facts of this case and the circumstances under which the injury occurred, the nature of the place and the attendant circumstances as shown by the witnesses, we think there was sufficient evidence before the jury from which they might fairly conclude that the master, who was represented by the shift boss, was negligent in the discharge of his duty in inspecting and examining or failing to inspect the place where respondent was set to work, and in not giving such directions as were necessary in order to have rendered the place safe, and thereby avoided the injury which resulted. (*Vanesse v. Catsburg Coal Co.*, 159 Pa. 403, 28 Atl. 200; *Peirce v. Kile*, 80 Fed. 865, 26 C. C. A. 201; *Cinkovitch v. Thistle Coal Co.* (Iowa), 121 N. W. 1036.)

Under such circumstances the servant would not be expected or required to make an inspection of the roof and walls or the condition of the place, but had a right to assume that the shift boss, who was in that case the vice-principal, had examined and inspected the place and found it to be reasonably safe. (*Texas & Pac. Ry. Co. v. Archibald*, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. ed. 1188; *Ross v. Shanley*, 185 Ill. 390, 56 N. E. 1105; *Illinois Steel Co. v. Schymanowski*, 162 Ill. 447, 44 N. E. 876; *Choctaw Ry. Co. v. McDade*, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. ed. 96; *Crist v. Wichita Gas etc. Co.*, 72 Kan. 135, 83 Pac. 199; *Crawford v. Bonners Ferry L. Co.*, 12 Ida. 686, 87 Pac. 998, 10 Ann. Cas. 1.) Under those circumstances the servant was only bound to take notice of the conditions he saw and those dangers that were patent and obvious. In a recent case—*Rowden v. Schoenherr-Walton Min. Co.*, 136 Mo. App. 376, 117 S. W. 695—the Missouri court of appeals quoted with approval from *Gibson v. Bridge Co.*, 112 Mo. App. 594, 87 S. W. 3, as follows: "It is not supposed, when given a task to perform, that he (the servant) will, on his own motion, consume his master's time in making comprehensive inspections to detect dangers. All that is required of him is that he use his senses in the position assigned him,

and, as to dangers not to him apparent, and not inherent to the employment, he has the right to rely upon his master's judgment and humanity for the safety of his position." But aside from the evidence found in this record as to the actual duty of the master as discharged through the shift boss, and the custom which prevailed in this tunnel, it is not too much, we think, to say that as a matter of law it was the duty of the master to have an employee there in the person of the shift boss or someone else whose specific duty it should be to examine and inspect the roof and walls of this tunnel following the firing of shots and previous to setting men to work with machines and drilling holes or to shoveling muck, or other work than the specific acts making the place safe. In other words, it was the duty of the master, under such circumstances and in the prosecution of such a dangerous and hazardous work, to have some specific agent charged with the particular duty of looking after and making reasonably safe a place in which so large a number of men were crowded together in hurriedly prosecuting the master's work. This does not mean that the master must or can make the place absolutely safe. The word "safe" as used in such a case is a relative term, and is used in connection with the character of the work and the nature of the place. It must be remembered, too, that the injury was not received by the servant while engaged in the work of making the place safe.

The evidence was sufficient to justify the jury in returning a verdict for the plaintiff.

This brings us to a consideration of the question as to the excessive character of the verdict rendered in this case. The plaintiff asked for a judgment for $15,000. The jury returned a verdict for the full amount. Maloney was twenty-nine years old at the time of this accident. He had been engaged for about nine years at similar work on railroad tunnels and mining tunnels in the states of Virginia, West Virginia, Arkansas and California. He testified that his wages during this period of nine years at tunnel work had ranged from three to five dollars per day. He was getting four dollars and ten cents per day for the work in this tunnel

where the accident occurred, and had some kind of an agreement for a bonus whereby he says he was making a total of five dollars per day. This appears to have been an arrangement the company had with its men to expedite the work and carry it on more rapidly than would ordinarily be the case. The evidence of the experts shows that his earning capacity is reduced about fifty per cent.

The respondent has also called our attention to certain authorities on practical surgery and the treatment of fractures in which the authors deal with the particular kind of injury the respondent received in this case, namely, a "Comminuted Pott's Fracture," which tends to eversion of the foot. It is said by one of these authorities that about seventy per cent of the cases recover, so that no serious or permanent inconvenience is suffered thereafter, while the remaining thirty per cent become permanently disabled, suffering more or less in some cases, and that there is an average loss of about fifty per cent in earning capacity. So in this case the evidence of the experts as to the loss of the earning capacity of respondent resulting from the injury is in substantial harmony with the authorities submitted on the same subject. We are therefore required to deal with the question of damages awarded in this case on the theory that the respondent's earning capacity has been permanently impaired about fifty per cent. Giving the respondent the most favorable consideration his evidence will justify, as to his previous earning capacity, his greatest average earning capacity would be $1,200 per year. To compensate him for the loss of one-half this income would entitle him to an annual income of $600. The legal rate of interest in this state is seven per cent, and we take it that anyone can obtain that rate or better on money in this country. Seven per cent on $15,000 would bring the respondent an annual income of $1,050. This is manifestly excessive, and disproportionate to the injury received or the resultant loss of earning capacity.

It is conceded that the respondent's general health is not impaired. Damages in these cases must be awarded on the

theory of a money consideration for the suffering, loss and injury which the complainant has received. A man would either be crazy or an arrant villain who would voluntarily submit to the loss of a limb for any money consideration. Indeed, damages are not awarded on the theory that the injured party has voluntarily submitted himself to the injury. On the contrary he is awarded damages because he has sustained an injury from which he himself could not, with the use of reasonable diligence, have escaped. After the injury has been sustained the only way of computing the loss is in dollars and cents, and that must be upon some theory or basis. The proper basis, and that recognized by all the authorities, is to compensate him for the loss he has sustained and will in the future sustain by and on account of the injury inflicted. Neither the law nor the one whose negligence caused the injury can restore to the victim a whole or sound body. The nearest thing, then, that can be done toward placing the party *in statu quo* is to so compensate him as to equal the pecuniary loss and diminished earning capacity entailed by reason of the injury: Watson on Damages and Personal Injuries, chap. 25.

The pecuniary and financial loss sustained can be estimated with a reasonable degree of certainty. On the other hand, the amount to be allowed for humiliation, pain and suffering entailed by the injury must be left to the arbitrary judgment of the jury (*Lindsay v. O. S. L. Ry.*, 13 Ida. 477, 90 Pac. 984, 12 L. R. A., N. S., 184; *Tarr v. O. S. L. Co.*, 14 Ida. 204, 125 Am. St. 151, 93 Pac. 957), subject only to correction by the courts for abusive and passionate exercise. (*Sloane v. Southern Cal. R. R. Co.*, 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193; Watson on Personal Injuries, secs. 311, 314.)

We have made considerable research in order to ascertain the views of the several courts of this country with reference to the proper amount of damages to be awarded for an injury similar to the one received by respondent. We will briefly call attention to some of the cases.

In *Wimber v. Iowa Central Ry. Co.*, 114 Ia. 551, 87 N. W. 505, a brakeman, thirty-nine years old and in good health, was

injured so that it was necessary to amputate one leg about six inches below the knee. A verdict was rendered in his favor for $14,500. The supreme court held the verdict excessive and reduced it to $8,000.

In *Budge v. Morgan's La. & Texas R. & S. Co.*, 108 La. 349, 3 So. 535, 58 L. R. A. 333, a brakeman sustained the loss of a leg, and a verdict and judgment for $12,500 was held excessive and reduced to $6,000. In *Chicago & N. W. Ry. Co. v. Jackson*, 55 Ill. 492, 8 Am. Rep. 661, a brakeman sustained an injury whereby he lost both legs. A verdict of $18,000 was held excessive, and the judgment was reversed on the ground that it would produce an income three times as large as his earning capacity.

In *Nicholds v. Crystal Plate Glass Co.*, 126 Mo. 55, 28 S. W. 991, the bones of the ankle were broken and the injury was of a permanent nature. A verdict of $8,666 was held excessive and reduced to $5,000. In *San Antonio & Ark. Pass Ry. Co. v. Connell*, 27 Tex. Civ. App. 533, 66 S. W. 246, a locomotive engineer earning from $135 to $150 a month lost a leg. The jury awarded a verdict of $18,000 and the court reduced it to $16,000. In *Cogswell v. West St. etc. Electric Ry. Co.*, 5 Wash. 46, 31 Pac. 411, a carpenter received an injury to his knee which prevented him following his regular vocation. The jury returned a verdict for $7,000 and the court reduced it to $5,000.

In *Chitty v. St. Louis I. M. & S. Ry. Co.*, 166 Mo. 435, 65 S. W. 959, plaintiff, who had been at different times engaged in scaling logs and keeping books, received an injury to one of his legs and ankle which kept him in the hospital for nine months and fifteen days, and who was apparently permanently injured, and at the expiration of seven years after the injury, when a second trial took place, was still suffering pain and the wound not entirely healed, was awarded a verdict of $15,000. The supreme court held the verdict excessive, and ordered that it be reduced to $10,000. In the opinion in the case last cited there is a table of cases showing the nature of the injury and the amount of the verdict in a number of similar cases. In

all these cases the courts held the verdicts excessive. As the same may be useful, we set them forth in this opinion. They are as follows: *Southwestern R. R. v. Singleton*, 66 Ga. 252, for fracture of leg, $14,833; *Lombard v. Railroad*, 47 Ia. 494, for broken leg, $4,000; *Kroener v. Railroad*, 88 Ia. 16, 55 N. W. 28, for loss of foot, $12,000; *Slette v. Railroad*, 53 Minn. 341, 55 N. W. 137, for broken leg, $4,100; *Johnson v. Railroad*, 67 Minn. 260, 69 N. W. 900, 36 L. R. A. 586, for broken ankle, $4,000; *Bailey v. Railroad*, 80 Hun, 4, 29 N. Y. Supp. 816, for loss of leg, $16,000; *Peri v. Railroad*, 87 Hun, 499, 34 N. Y. Supp. 1009, for loss of foot, $10,000; *Bronson v. Railroad*, 67 Hun (N. Y.), 649, 21 N. Y. Supp. 695, for broken leg, $11,000.

It will be seen from an examination of the foregoing authorities as well as many others that the courts have almost invariably held verdicts of anything like the amount of this excessive, and have accordingly exercised their power and authority in ordering a modification of the judgment or in granting a new trial on account of prejudice and bias of the jury in rendering such excessive verdicts. In our examination of these various cases dealing with injuries of a similar character to the one under consideration, we find that the average judgments as finally ordered by the appellate courts have been less than $10,000. It is clear that a recovery should not be allowed to the extent of a vindictive or punitive judgment. If the master has been guilty of wanton and criminal negligence, it is the clear and unmistakable duty of the state to deal with him through the criminal laws, and to allow the servant to recover to such an extent only as will leave him as nearly as possible in as good a position as he was before the infliction of the injuries. This verdict is clearly excessive, and we have concluded that it should be reduced to $10,000. This would insure him an annual income of at least $700 from the principal sum. This will fully compensate him for his annual loss of earning capacity and still will give him a fair compensation for the pain and suffering inflicted by the injury.

The judgment will be affirmed to the extent of $10,000 on condition that the respondent file within thirty days after going down of the *remittitur* a waiver of the excess of $5,000 and an acceptance of the judgment as thus modified. On failure to do so the judgment will be reversed *in toto* and a new trial granted. Modified and affirmed accordingly, with costs in favor of *respondent*.

Sullivan, C. J., and Stewart, J., concur.

### ON REHEARING.

#### (December 7, 1910.)

#### (Syllabus by the court.)

9. The courts of this state will not take judicial notice of the laws of a sister state. In the absence of pleadings and proof as to what the laws are in another state, the courts of this state will assume that the laws prevailing in a foreign state are the same as the laws of this state.

10. Where a question before the court is governed by the rule of the common law instead of by statute, the court will presume, in the absence of proof to the contrary, that the common law prevails in the state where the injury occurred, and that the common law is understood and construed to be the same in the foreign state as it is in the state of the forum.

Briefs filed on behalf of Appellant by Edgar Wilson, A. G. Kerns, and F. M. Dudley.

Briefs filed on behalf of Respondent by Gray & Knight, and John H. Wourms.

The leading authorities cited by counsel on points decided are referred to in the opinion of the court.

AILSHIE, J.—A rehearing was granted in this case, and the matter was argued exhaustively orally, and four separate briefs by different counsel have been filed on behalf of appellants, in which the questions of fact involved are discussed and the authorities bearing on the case have been exhaus-

tively analyzed and considered. The chief argument on behalf of appellant has been directed to two propositions: first, that in a case like this the master is under no obligation to furnish the servant with a safe place in which to work, that at the most "the master is only liable to the exercise of reasonable care to furnish the servant with a reasonably safe place in which to discharge the work for which he is employed." Second, it is insisted that the mere happening of an accident does not imply that the master has been negligent, but that the master's negligence must be alleged and proven.

We will first briefly notice these questions before dealing with the other questions to which less importance has been attached. It is both impracticable and impossible for the court to review and consider the multitude of authorities cited in this case. We may say, however, in the outset, that we have no serious fault to find with either of the propositions above stated for which appellant contends. To say that the master is under the duty of exercising "reasonable care" in order to make a place "reasonably safe" in which his servant is to work is substantially the same as to say "the master must furnish the servant a reasonably safe place in which to work." To say that there is any material or substantial difference between the two propositions is only a legal refinement and a theoretical distinction which is not distinguishable by a jury of practical men in drawing the line between duty and negligence. The master must use reasonable care in each instance, and that is true whether he is to furnish a "reasonably safe place" in which the servant shall work or the servant himself is employed to make the place in which he shall work. In no event is the master relieved from the exercise of "reasonable care" for the safety and protection of his employee. In the one case, however, the employee may not be able to recover because of his assumption of risk or his contributory negligence, and in another case he may be free from fault himself and the master is liable on account of his failure to exercise reasonable care. In other words, the failure of the master to discharge his legal duty by the exercise of reasonable care

does not always subject him to liability in damages, for the reason that other intervening circumstances sometimes relieve him of liability.    (*Longpre v. Big Blackfoot M. Co.*, 38 Mont. 99, 99 Pac. 131.)

Under the second proposition advanced by counsel for appellant, particular stress is laid upon the following sentence found in the original opinion, which succeeds a statement of the reciprocal duties and liabilities of the master and servant: ''The law assumes that when these reciprocal duties have been faithfully discharged no injury of which the law takes cognizance will occur, but the moment an accident does occur, the presumption arises that either the master or servant has been negligent, or that both have contributed to the injury.''    We apprehend that the objection to the foregoing quotation arises either out of a failure to observe it closely or read it in connection with the balance of the opinion.    As an abstract proposition, we think there can be no doubt as to its correctness.    The presumption which it is stated arises on the happening of an accident does not, in the absence of proof, identify the party guilty of the negligence. It is stated, and we think correctly too, that as an abstract proposition the happening of an accident ''of which the law takes cognizance'' at once implies an act of negligence on the part of someone.    It is not the law anywhere, so far as we are aware, that the mere happening of an accident is of itself proof that the *master* has been negligent and is liable for the injury and damage sustained.    The happening of the accident, however, must be proven before there is any occasion for proving negligence on the part of the master.    The fact of the accident and injury established, circumstances and physical conditions may be resorted to for the purpose of determining on whom the responsibility for the accident rests and to whom the negligence is imputable.    In the original opinion we said:

''The evidence does not show either that an inspection was or was not made prior to the accident.    Respondent testified that it looked safe so far as he could see when he went to work, but appellant does not show that any inspection had

been made. The rock and earth which fell on respondent appears to have come from the roof of the tunnel, and the witnesses say that if the roof had been sounded, that it is reasonably certain that the accident would have been averted. They testify as to the nature of the formation and probability of a sounding having located this danger and enabled the men to bar it down before commencing to muck. . . . . Under the facts of this case and the circumstances under which the injury occurred, the nature of the place and the attendant circumstances as shown by the witnesses, we think there was sufficient evidence before the jury from which they might fairly conclude that the master who was represented by the shift boss was negligent in the discharge of his duty in inspecting and examining or failing to inspect the place where respondent was set to work, and in not giving such directions as were necessary in order to have rendered the place safe and thereby avoided the injury which resulted.'' (See, also, *Norman v. Wabash R. Co.,* 62 Fed. 727, 10 C. C. A. 617; *Central Coal & Coke Co. v. Williams,* 173 Fed. 337, 97 C. C. A. 597; *Haynie v. Tenn. Coal, Iron & R. Co.,* 175 Fed. 55.)

In this case the servant was not primarily engaged in making the place safe in which he worked. In this respect the case differs materially from *Thurman v. Pittsburg & Montana Copper Co.* (Mont.), 108 Pac. 588, on which appellant relies. There the servant was charged with the special duty of making the place safe. Here the servant was under the direction and control of the shift boss. It was his duty when directed by the shift boss to assist in making the place safe. The determination, however, as to what should be done and when it was necessary to perform an act looking toward the making of the place safe rested with the shift boss, and it was the duty of the shift boss to make the inspection before setting the men to work. In this case it does not appear whether an inspection was made or not. The defendant produced no evidence to that effect, and the plaintiff did not know. He did know, however, that subsequent events demonstrated that the place was not safe. He furnished proof of the physical conditions and the attendant circumstances,

from which it might well be concluded that the inspection had either not been made, or if made had been negligently made.

Three days prior to the filing of the original opinion in this case, the court of appeals of the state of Kentucky had under consideration a case involving a very similar state of facts in *Williams Coal Co. v. Cooper* (Ky.), 127 S. W. 1000. The court said in that case:

"It is argued that, if it was the duty of the coal company to keep the room reasonably safe, this duty was performed, as the 'loader' whose business it was to examine the roof and put it in a reasonably safe condition performed this service; at any rate, exercised his best judgment in attempting to do so. And it is said that, as the 'loader' believed after inspection that the room was reasonably safe, his judgment is conclusive of the question that the master furnished a reasonably safe place. But with this argument we cannot agree. In the opinion of the 'loader' the room may have been reasonably safe, but the fact that the roof fell soon after his inspection demonstrates that it was not reasonably safe. . . . . It is a question for the jury to say from the evidence whether or not the place was reasonably safe. And in considering this question they had the right to give such weight as they deemed proper to the statement of the inspector. They may or may not believe from it that the master discharged his duty in furnishing a reasonably safe place."

The same court as late as June 1st of this year again had the same question under consideration in *Huddleston's Admr. v. Straight Creek Coal & Coke Co.* (Ky.), 128 S. W. 589, and after considering an argument very much like that made in this case, said:

"We cannot give our approval to a doctrine like this. The jury have the right to hear and consider, not only the evidence from the mouths of witnesses as to what they did and what was done, but they have also the right to hear and consider other evidence from witnesses who are qualified to testify as to the physical condition of the place and appliance

before, at the time, and immediately after the accident, and the jury may from the facts and circumstances thus proven be warranted in concluding that they are entitled to more weight than the personal evidence of the witnesses whose testimony was in contradiction of these facts and circumstances. Let us take this case as an apt illustration. Notwithstanding the uncontradicted evidence of Elswick, the jury might be of the opinion, based upon the evidence of the physical conditions, that, as the roof fell soon after his inspection, he did not make a careful inspection, or, in other words, that the master did not exercise ordinary care to put and keep the entry in reasonably safe condition. This was a question for the jury, not the court, and so the court erred in taking the case from the jury.''

The accident in this case occurred in the tunnel on the Montana side of the line between Idaho and Montana. It has been argued on the rehearing that under the statutes and decisions of Montana, a recovery could not be had in this case in Montana, and that it is accordingly the duty of this court to deny the respondent any relief. On the proposition that respondent could not recover in Montana, counsel cite two cases from the supreme court of that state—*Cummings v. Reins Copper Co.*, 40 Mont. 599, 107 Pac. 904, and *Osterholm v. Boston & Montana C. C. & S. M. Co.*, 40 Mont. 508, 107 Pac. 499; and on the general proposition that the respondent is bound by the law of the place where the injury occurred, counsel cite: *Baltimore & Ohio S. W. R. Co. v. Reed*, 158 Ind. 25, 92 Am. St. 293, 62 N. E. 488, 56 L. R. A. 468; *Chicago & E. I. R. Co. v. Rouse*, 178 Ill. 132, 52 N. E. 951, 44 L. R. A. 410; *Alabama G. S. R. Co. v. Carroll*, 97 Ala. 126, 38 Am. St. 163, 11 So. 803, 18 L. R. A. 433; *Kansas City Ft. S. & M. R. Co. v. Becker*, 67 Ark. 1, 77 Am. St. 78, 53 S. W. 406, 46 L. R. A. 814; *Turner v. St. Clair Tunnel Co.*, 111 Mich. 578, 66 Am. St. 397, 70 N. W. 146, 36 L. R. A. 134; *Mexican Nat. R. Co. v. Jackson*, 89 Tex. 107, 59 Am. St. 28, 33 S. W. 857, 31 L. R. A. 276. The trouble with the application of the rules announced by these authorities is that in the present case the appellant failed to plead and prove in the lower

court the laws of Montana as a defense to the action. We cannot take judicial notice of the laws of a sister state. In the absence of pleading and proof as to what the laws are in a sister state, we must assume that the same law prevails in the foreign state that prevails here. The authorities are uniform to this effect. This court has recognized the rule in *Moore v. Pooley,* 17 Ida. 61, 104 Pac. 898. (See 5 Ency. of Ev. 813; 2 Wharton, Conflict of Laws, 3d ed., 781 a-b; *Hall v. Pillow,* 31 Ark. 32; *Norris v. Harris,* 15 Cal. 226; *Hickman v. Alpaugh,* 21 Cal. 225; *Daggett v. Southwest Packing Co.,* 155 Cal. 762, 103 Pac. 204; *O'Sullivan v. Griffith,* 153 Cal. 502, 95 Pac. 873; *Schwartz v. Panama R. Co.,* 155 Cal. 742, 103 Pac. 196; *Justis v. Atchison, T. S. F. Ry. Co.,* 12 Cal. App. 639, 108 Pac. 328; *Bemis v. McKenzie,* 13 Fla. 553; *Hill v. Wilker,* 41 Ga. 449, 5 Am. Rep. 540; *Baltimore & Ohio Ry. Co. v. Freeze,* 169 Ind. 370, 82 N. E. 761; *News Publishing Co. v. Associated Press,* 114 Ill. App. 241; *Goodwin v. Provident Sav. Life Assur. Assn.,* 97 Iowa, 226, 59 Am. St. 411, 32 L. R. A. 473, 66 N. W. 157; *Beshears v. Nelson Distilling Co.,* 80 Kan. 194, 101 Pac. 1011; *Sandidge v. Hunt,* 40 La. Ann. 766, 5 So. 55; *McKenzie v. Wardwell,* 61 Me. 136; *Bearse v. McLean,* 199 Mass. 242, 85 N. E. 462; *Brimhall v. Van Campen,* 8 Minn. 1, 82 Am. Dec. 118; *Standard Leather Co. v. Mercantile Town Mut. Ins. Co.,* 131 Mo. App. 701, 111 S. W. 631; *Bannard v. Duncan,* 79 Neb. 189, 126 Am. St. 661, 112 N. W. 353; *Rogers v. Hatch,* 8 Nev. 35; *Hall v. So. Ry. Co.,* 146 N. C. 345, 59 S. E. 879; *Brumagim v. Chew,* 19 N. J. Eq. 130; *Harn v. Cole,* 20 Okl. 553, 95 Pac. 415; *Betz v. Wilson,* 17 Okl. 383, 87 Pac. 844; *Schlotterbeck v. Schwinn,* 23 Okl. 681, 103 Pac. 854; *Bolinger v. Gallagher,* 144 Pa. 205, 22 Atl. 815; *Jonesville Mfg. Co. v. So. Ry. Co.,* 77 S. C. 480, 58 S. E. 422; *Windhorst v. Bergendahl,* 21 S. D. 218, 130 Am. St. 715, 111 N. W. 544; *Star Clothing Mfg. Co. v. Nordeman,* 118 Tenn. 384, 100 S. W. 93; *Atchison T. & S. F. Ry. Co. v. Mills,* 49 Tex. Civ. App. 349, 108 S. W. 480; *Missouri K. & T. Ry. Co. v. Wise* (Tex. Civ. App.), 106 S. W. 465; *Kinkaid v. Lee* (Tex. Civ. App.), 119 S. W. 342; *Atchison T. & S. F. Ry. Co. v. Smythe* (Tex. Civ. App.), 119 S. W. 892;

*Clark v. Eltinge,* 38 Wash. 378, 107 Am. St. 851, 80 Pac. 556; S. C., 29 Wash. 215, 69 Pac. 736; *Gunderson v. Gunderson,* 25 Wash. 459, 65 Pac. 791; *Edleman v. Edleman,* 125 Wis. 270, 104 N. W. 56; *McKnight v. Oregon S. L. R. R. Co.,* 33 Mont. 40, 82 Pac. 661; *Crosby v. Cuba R. Co.,* 158 Fed. 144; *Cuba R. Co. v. Crosby,* 170 Fed. 369.) Where the question before the court is governed by the rule of the common law instead of by statute, the court will presume, in the absence of proof to the contrary, that the common law prevails in the state where the injury occurred and that it is the same in that state as in the state of the forum. (5 Ency. of Ev. 817–820; *Mountain Lake Land Co. v. Blair,* 109 Va. 147, 63 S. E. 751; *Taber v. Seaboard Air Line Ry. Co.,* 81 S. C. 317, 62 S. E. 311, and cases above cited.)

Counsel for appellant finally insist that, if the judgment must be affirmed in this case, the damages even as reduced by the previous decision are still excessive. In support of this contention, counsel have cited a number of additional authorities in which the question of the amount of damages to be awarded and the age and condition of the party injured and his capacity for earning wages are all considered. As they may be useful to counsel in other similar cases, we cite them herein: 13 Cyc., pp. 134, 135; *Bosworth v. Standard Oil Co.,* 92 Hun, 485, 37 N. Y. Supp. 43; *Nicholds v. Crystal Plate Glass Co.,* 126 Mo. 55, 27 S. W. 516, 28 S. W. 991; *Cogswell v. West St. & N. E. Electric Ry. Co.,* 5 Wash. 46, 31 Pac. 411; *Florida Ry. & Nav. Co. v. Webster,* 25 Fla. 394, 5 So. 714; *Kroener v. Chicago, M. & St. P. Ry. Co.,* 88 Iowa, 16, 55 N. W. 28; *Missouri Pac. Ry. Co. v. Dwyer,* 36 Kan. 58, 12 Pac. 352; *Kennon v. Gilmer,* 9 Mont. 108, 22 Pac. 448; *Brown v. Southern Pac. R. Co.,* 7 Utah, 288, 26 Pac. 579; *Thompson v. Chicago, St. P. & K. C. Ry. Co.,* 71 Minn. 89, 73 N. W. 707; *Moore v. W. R. Pickering Lumber Co.,* 105 La. 504, 29 So. 990; *Wimber v. Iowa Cent. Ry. Co.,* 114 Iowa, 551, 87 N. W. 505; *Bell v. Globe Lumber Co.,* 107 La. Ann. 725, 31 So. 994; *Budge v. Morgan's L. & T. R. & S. S. Co.,* 108 La. 349, 32 So. 535, 58 L. R. A. 333.

On the other hand, counsel for respondent insist that the court erred in the original opinion herein in reducing the judgment, and that it should have been allowed to stand as assessed by the jury and entered of judgment by the trial court. In support of respondent's contention, his counsel have cited us to the following additional authorities considering the amount of damages allowable in similar cases; *Eckels v. Edison,* 139 Ill. App. 75; *Canfield v. Chicago etc. R. Co.,* 142 Iowa, 658, 121 N. W. 186; *Williams v. Spokane Falls & Northern R. R. Co.,* 42 Wash. 597, 84 Pac. 1129, also 87 Pac. 491; *Indiana etc. R. Co. v. Otstot,* 212 Ill. 529, 72 N. E. 387; *Wimber v. Iowa Cent. Ry. Co.,* 114 Ia. 551, 87 N. W. 505; *Budge v. Morgan's La. & Texas R. & S. Co.,* 108 La. 349, 32 So. 535, 58 L. R. A. 333; *Railroad Co. v. Jackson,* 55 Ill. 492, 8 Am. Rep. 661; *Nicholds v. Crystal Plate Glass Co.,* 126 Mo. 55, 28 S. W. 991; *San Antonio & Ark. Pass. Ry. Co. v. Connell,* 27 Tex. Civ. App. 533, 66 S. W. 246; *Texarkana etc. R. Co. v. Toliver,* 37 Tex. Civ. App. 437, 84 S. W. 375; *The Fullerton,* 167 Fed. 1, 92 C. C. A. 463; *International & G. N. R. Co. v. Brice* (Tex. Civ. App.), 126 S. W. 613; *Galveston etc. R. Co. v. Abbey,* 29 Tex. Civ. App. 211, 68 S. W. 293; *Engler v. Western Union Tel. Co.,* 69 Fed. 185; *Jones v. N. Y. Cent. Ry. Co.,* 99 App. Div. 1, 90 N. Y. Supp. 422; *Mitchell v. Broadway etc. R. Co.,* 70 Hun, 387, 24 N. Y. Supp. 32; *Chicago etc. R. Co. v. Dunn,* 106 Ill. App. 194; *Chicago etc. R. Co. v. Spurney,* 197 Ill. 471, 64 N. E. 302; *Tully v. Steamship Co.,* 10 App. Div. 463, 42 N. Y. Supp. 29; *Illinois Cent. R. R. Co. v. O'Connor,* 90 Ill. App. 142; *Yazoo etc. R. Co. v. Scott* (Miss.), 48 So. 239; *Gale v. N. Y. Cent. R. Co.,* 13 Hun, 4; *Galveston etc. R. Co. v. Murphy* (Tex. Civ. App.), 114 S. W. 443; *Rodney v. St. Louis, Southwestern R. Co.,* 127 Mo. 676, 28 S. W. 887, and 30 S. W. 150; *Texas & N. O. R. Co. v. Parsons* (Tex. Civ. App.), 109 S. W. 240, 113 S. W. 914; *Texas etc. R. Co. v. Carr* (Tex. Civ. App.), 42 S. W. 126; *Merchants' etc. Transp. Co. v. Corcoran,* 4 Ga. App. 654, 62 S. E. 130; *Houston etc. R. Co. v. Randall,* 50 Tex. 254; *Dougherty v. Missouri R. Co.,* 97 Mo. 647, 8 S. W. 900, 11 S. W. 251; *Missouri Pac. Ry. Co. v. Mackey,* 33 Kan. 298, 6 Pac.

291; *Trinity & S. Ry. Co. v. Lane,* 79 Tex. 643, 15 S. W. 477,
16 S. W. 18; *O'Donnell v. American Refining Co.,* 58 N. Y.
Supp. 640; *Baltzer v. Chicago M. & N. R. Co.,* 89 Wis. 257,
60 N. W. 716; *Chicago etc. Co. v. Rembarz,* 51 Ill. App. 543;
*Louisville & N. R. Co. v. Mitchell,* 87 Ky. 327, 8 S. W. 706;
*Atchison etc. R. Co. v. Moore,* 31 Kan. 197, 1 Pac. 644; *Illinois Cent. R. Co. v. Harris,* 63 Ill. App. 172; *Lee v. So. Pac.
R. Co.,* 101 Cal. 121, 35 Pac. 572; *Coleman v. Southwick,* 9
Johns. (N. Y.) 45, 6 Am. Dec. 253; *Montgomery Traction Co.
v. Knabe,* 158 Ala. 458, 48 So. 501; *Macon etc. R. Co. v.
Winn,* 26 Ga. 250; *Davis v. Holy Terror Min. Co.,* 20 S. D.
399, 107 N. W. 374; *Morgan v. So. Pac. Ry. Co.,* 95 Cal. 501,
30 Pac. 601; *Foley v. Everett,* 142 Ill. App. 250; *Reeks v.
Seattle Electric Co.,* 54 Wash. 609, 104 Pac. 126; *Burch v.
So. Pac. Co.* (Nev.), 104 Pac. 225; *Solen v. Virginia etc. Ry.
Co.,* 13 Nev. 106; *McLean v. City of Lewiston,* 8 Ida. 472, 69
Pac. 478; *Howland v. Oakland Con. Co.,* 110 Cal. 513, 42 Pac.
983; *Wall v. Livezay,* 6 Colo. 465; *Ryan v. Gilmer,* 2 Mont.
523, 25 Am. Rep. 744; *Aldrich v. Palmer,* 24 Cal. 513;
*Wheaton v. N. B. & M. R. R. Co.,* 36 Cal. 591; *Boyce v. California Stage Co.,* 25 Cal. 460; *Wilson v. Fitch,* 41 Cal. 363.

Our further examination and consideration of the question
as to the amount of damages that should be allowed has failed
to convince us that any change should be made from that
allowed by the original opinion. We recognize the fact that
there is no absolute standard by which damages can be measured in these cases. We are of the opinion, however, that
the amount awarded by the jury in this case was excessive,
and in view of all the facts and circumstances, and in the
light of the decisions from the various states which have considered this subject, we feel that the sum of $10,000 to which
the judgment was reduced by the original opinion is fair and
as near an approximation to justice in the case as we can
reach.

We feel that we should not close the consideration of this
case without reverting to one argument that has been made
in the briefs on behalf of appellant which does not have
to do with the law of the case so much as with the public

policy of the state. It has been argued with a great deal of zeal that the rule of law as announced in the original opinion is entirely too harsh on the master, and if permanently adopted in this state, will have the tendency to discourage investments, the building of railroads and street and electric car lines, power plants, mining development, and will generally retard the growth and development of the state's resources and industries. We feel that this apprehension is wholly unfounded, and arises more out of a fear of an erroneous application of the rule we have announced than of any error of severity in the rule itself. The resources and industries of this state ought to be developed, and it is the hope of every citizen, including the members of this court, that railroads may be built, mines developed, and diversified industries built up, and it is not the temper or purpose of the court to promulgate any rule of decision that will hamper or deter any legitimate enterprise or industry, but we do want to be understood as insisting that this march of progress and development shall not come at a sacrifice of human life and safety, or in disregard of the common rights of the laboring man who shall furnish the brawn and sinew for that work.

After a somewhat laborious and tedious examination of this case a second time, we feel that the original opinion correctly states the principles of law applicable to the case, and that the conclusion reached on the former hearing should stand as the judgment of the court in this case. The judgment of the trial court will therefore be affirmed to the extent of $10,000, on condition that the respondent file within thirty days after the going down of the *remittitur* a waiver of the excess of $5,000 and an acceptance of the judgment as thus modified. On failure to do so, the judgment will be reversed *in toto* and a new trial granted. Modified and affirmed accordingly, with costs in favor of the respondent.

Sullivan, C. J., concurs.